## Staunton.

### KECKLEY v. UNION BANK OF WINCHESTER.

#### October 2, 1884.

1. PRACTICE AT COMMON LAW—*General Issue—Special Pleas.*—Where, in an action at law, the pleadings have already been made up on the general issue, and after much delay the defendant tenders prolix and obscure special pleas setting up matters amounting to the general issue and provable under it, the rejection of such pleas by the trial court is not error. *B. & O. R. R. Co.* v. *Polly, Woods & Co.*, 14 Gratt. 447.

2. IDEM—*Usury—Special Pleas—Case at Bar.*—Special plea avers that note in suit was made for balance of a note given by one not a party to the suit, for the aggregate of sundry notes, one whereof was undue, and that there was no allowance made for that fact in ascertaining such aggregate, and that hence interest having been twice exacted for the sum of the undue note, the note for the aggregate was usurious, and tainted the note in suit—

HELD:

> Failing to include the present worth only, instead of the face value of the undue note, did not constitute usury in the note for the aggregate; but if it did, the taking of the note in suit was such change of parties as purged the transaction of usury, and the new note is valid. *Drake* v. *Chandler*, 18 Gratt. 909.

3. IDEM—*Mistakes—Equitable Defences—Case at Bar.*—Where plea avers that note in suit was made for balance of a note given for the aggregate of sundry notes, and that in the aggregate there was by mistake included a note which had been paid, and that the mistake had been continued on into the note in suit, and was only recently discovered by defendant—

HELD:

> If such be a defence, it should have been made by a sworn plea under Code 1873, ch. 168, sec. 5, or in a court of equity.

4. IDEM—*Inducements—Equitable Defences.*—Where plea avers that defendant had been induced by plaintiff to make a note, for which the note in suit is a renewal, and which was given for another's debt, by representing to defendant that that debt was amply secured by trust deed on real estate, whilst the plea on its face shows that the note was renewed several times after defendant knew that the trust deed would not satisfy the debt, and that defendant had changed the debt by dropping the original debtor, and giving the note in suit; such facts constitute no defence to the note in suit.

5. IDEM—*Duress—Case at Bar.*—Previous to 1872 B. had made sundry notes held by plaintiff, and had forged thereon the names of the defendants, C. & K., the latter being his son-in-law. Plaintiff informed K. that B. would be prosecuted for the forgery, unless K. with C., as endorsers for B., as maker, gave a new note in lieu of the forged notes. The new note was accordingly given, and B. was not prosecuted. The note of 1872 was repeatedly renewed, and the note in suit was given by defendants (B. having been dropped off) for the balance, after sundry payments—

HELD:

These facts do not amount to such *duress* as will avoid a contract.

6. IDEM—*Pleadings—Amendments—Delay.*—Defendant should be permitted to amend his pleadings, or add to his pleas whenever justice requires it, provided unreasonable delay be not thereby occasioned, or good reason be shown for not having done so sooner. But he will not be permitted so to do where he has had ample opportunity for earlier action, and has, without sufficient excuse, delayed until the trial is at hand.

Error to judgment of circuit court of Frederick county, rendered March 12th, 1884, in an action of debt wherein the plaintiff was the Union Bank of Winchester, and Adam Clevinger, J. F. Keckley and William Pannett were defendants. This action was instituted in January, 1882, on a negotiable note made July 8th, 1879, by said Clevinger for one thousand dollars payable to said Keckley, or order, at said bank, one hundred and twenty days after date, and endorsed by said Keckley and said Pannett.

At the March term, 1882, the defendants plead *nil debet*, and issue was joined thereon. The case was from time to time continued, without any additional plea being offered, until the

June term, 1883, when the defendant, Keckley, offered several special pleas in writing, to the reception of which pleas the plaintiff objected on the ground that they had been unreasonably delayed, and to file them at that time would operate surprise and injustice to it. On this motion to reject, affidavits were read by both parties.

The court, under the circumstances, rejected all of said pleas except plea No. 3, which was permitted to be filed. And to this action of the court rejecting said pleas, except said plea No. 3, the said defendants excepted. At this term the cause was continued for the defendant, with leave to him (Keckley) to file special pleas within thirty days.

At the November term, 1883, the defendant, Keckley, tendered seven special pleas, to each of which the plaintiff demurred, and the court sustained the demurrer to each plea. At the March term, 1884, when the cause was called for trial, the defendant, Keckley, offered the plea of usury in the general terms prescribed by the statute (Code 1873, ch. 137, § 8), which was objected to by the plaintiff, and was by the court rejected; and the defendant again excepted; and the trial was then proceeded with (both parties waiving a jury and agreeing to submit the case to the court), and a judgment rendered for the plaintiff for the debt, interest and costs, and charges of protest. From that judgment the case is here on writ of error. Opinion gives the substance of the rejected pleas.

*Dandridge & Pendleton, J. H. Williams,* for the plaintiff in error.

*Byrd & Huck, Barton & Boyd, Holmes Conrad,* for the defendant in error.

RICHARDSON, J., after stating the case, delivered the opinion of the court:

The question for determination is, did the court below err in sustaining the demurrer to each and all of said special pleas, numbered from 1 to 7 inclusive, or in rejecting the said defendant's said plea No. 8? .

These pleas will now be considered in their numerical order:

I. The plea No. 1, in substance, alleges that the note sued on is the residue, after sundry payments, of a note to plaintiff for $2,278.12, executed by H. Bowers as maker, and endorsed by A. Clevinger and J. F. Keckley, of date September 30th, 1872, and discounted for the benefit of said Bowers, and none other; that said last note was so executed in lieu of sundry notes executed theretofore by said Bowers as maker, on which he had forged the names of said Keckley and Clevinger, and of others, as endorsers, and upon which, prior to said September 30th, 1872, he, said Bowers, had obtained the amounts thereof (being about $2,278.12) from said plaintiff, by discount thereof, and that at the time of the execution to plaintiff of said note of $2,278.12, said plaintiff and said defendant (Keckley) knew that said prior notes had been so forged, and that said note of $2,278.12 was executed without any new consideration whatever, and discounted for the use and to the credit of said Bowers only, and all of said renewals, including said note sued on, were executed without any new or other consideration, &c.

There can be no doubt that the demurrer to this plea was properly sustained. The plea, after referring to alleged forged notes, without specifying what notes they were, so as to inform the plaintiff definitely of the special defence intended to be set up and enable it to prepare to meet that defence, simply says that such forged notes constituted no consideration for the new note; but also goes on to say that the note sued on was given for the balance of a note which was executed in lieu of the original forged notes. Now, the "debt averred in the declaration" to which this plea is filed is a note for $1,000, dated July 8th, 1879, at 120 days. It is, therefore, manifest from the plea that *time* was given to another party (Bowers) upon his alleged

forged notes, and time given to another is a good consideration for any undertaking by any party on behalf of another. 2 Bl. Comm. 444; Smith on Contracts, 141. Again, the plea does not aver that the defendant, Keckley's, name had been forged by Bowers on certain specified notes amounting to said sum of $2,278.12, but that said Bowers had, prior to September 30th, 1872, the date of the note for the last named sum, forged the names of Keckley, Clevinger, *and others,* as endorsers, on sundry notes, upon which said Bowers had obtained the amounts thereof (being *about* $2,278.12) from the plaintiff, by discount thereof.

For aught that appears to the contrary, in some of these undefined instances, Keckley's name, as endorser, may have been genuine, not forged; for the record discloses the fact that prior to and coming down near to September 30th, 1872, Keckley, with others, appears as endorser for Bowers on a large number of notes discounted by the plaintiff bank, aggregating several times as much as the said note for $2,278.12, alleged to have been given in lieu of the former forged notes. The plea does not say which of all this list make up the forged notes in lieu of which the $2,278.12 note was given, and for the remainder of which, after curtailments and renewals, the note in suit was given. The defence attempted to be set up by this plea was want of consideration—a defence clearly admissible under the plea of *nil debet.*

Discussing this plea, Mr. Minor says, vol. IV, part 1, page 641: "Under the plea of *nil debet* the defendant may prove at the trial, coverture, lunacy, duress, infancy, release, arbitrament accord and satisfaction, payment, want of consideration, failure of consideration, fraud, and, in short, anything which proves that there is no existing debt due. The statute of limitations, bankruptcy and tender are believed to be the only defences which may *not* be proved under this plea," &c.

It may be doubted, however, whether Mr. Minor intended in the above enumeration to include the express statutory defences

provided for, such as failure of consideration, or fraud in the procurement of the contract, or breach of warranty of the title, or soundness of personal property, which must be pleaded specially, and the plea sworn to.   See Code 1873, chapter 168, § 5 ;  Barton's Law Practice, 141.

It must be admitted that under the well established rule, the defence attempted by this plea, while it may be made under the plea of *nil debet,* belongs to the class which may nevertheless be plead specially.    But this being so, the objections to the plea already given still remain.    The plea, in short, tends to prolixity and tediousness, and not to that certainty which must produce speedily a single point for determination.    All that is stated in the plea may be true, but the matter as plead does not constitute a valid defence ; and hence the plea itself illustrates the important office of a demurrer, by which all such pleading is cut up by the root.

II.  Plea No. 2 attempts, in an unusual way, to set up the defence of usury, but is not presented in the general terms prescribed by the statute.    Code 1873, chapter 137, § 8.    The plea alleges usury in this, that in the note for $2,278.12, which was the aggregate of sundry other notes, was included one note for $400, and other sums not necessary to mention, which, at the time of the execution of the note for $2,278.12, had still thirty days to run, and that by including the note for $400 in that for $2,278.12, and discounting the whole of that note at nine per cent. (within the limit then allowed by law) for six months from September 30th, 1872, interest for thirty days was twice charged on said sum of $400.

It will be observed that the $2,278.12 note was drawn originally by H. Bowers, with A. Clevinger and the appellant, Keckley, as endorsers (the endorsers' names alleged to have been forged) ; that subsequently the note was renewed, and Bowers dropped, and by payments from time to time the note reduced to the amount now in suit.   Do the facts averred in the plea amount to usury ?   We think not.   The plea does not aver any

taint of usury except as to said $400. This did not constitute
reserving by contract more than lawful interest. It was but the
case of a man discharging a debt before it was due. But if that
could be tortured into a usurious transaction, the new note made
by a different person, and endorsed as it was, is purged of the
usury. Chitty on Contracts, 706; *Drake's Ex'or* v. *Chandler,*
18 Gratt. 911.

III. Plea No. 3 is somewhat difficult to understand. It
alleges that in making up the note for $2,278.12 on 30th Sep-
tember, 1872, which was the aggregate of the notes then held
by the bank, a note for $240 was included, and that note was
paid October 16th, 1872, and no credit given for it then, or in
subsequent renewals of the $2,278.12 note. Observe, the last
named note was dated September 30th, 1872, payable at six
months. Now, if the $240 note was embraced in the note of
September 30th, and paid on the 16th October, 1872, long before
the large note matured, it is manifest that the plea is on its
face strangely inconsistent, and the conclusion is irresistible that
the $240 note could not have been embraced in the note for
$2,278.12. But this is made conclusive by the plea itself, which
exhibits as part thereof an account of notes held by said bank
prior to the making of the note for $2,278.12, and aggregating
more than enough to make up that sum, in which list the $240
note does not appear, yet the plea alleges that this list was fur-
nished by the bank at the time of the transaction; and that the
$2,278.12 note was executed in lieu of the notes contained in
that list. The plea further alleges that the payment of $240
thus made was by mistake; that the mistake as alleged, now
appears by the books of said bank, that the amount has not been
credited on said note at any of the subsequent renewals, and
that the mistake was only recently discovered. As to this
averment, it is only necessary to say it is as to a payment *eleven
years* prior to the plea, is clearly barred by the statute of limi-
tations, and if, as alleged, a mistake occurred, it is a matter for
relief, if at all, in a court of equity, or by sworn plea under Code

1873, chapter 168, § 5. Clearly there was no error in sustaining the demurrer to this plea.

IV. Plea No. 4 alleges that the note in suit is the residue of said $2,278.12 note made by said Bowers and endorsed by said Keckley and Clevinger; that at the time of the execution of said note, Bowers executed a deed of trust to secure the same (which deed of trust, with all its certificates of acknowledgments, is set out in *totidem verbis* in the plea); that plaintiff, by its agent, assured the defendant that the trust would be sufficient to pay the debt; that because of that assurance defendant issued the notes, and that upon foreclosure the property conveyed by said trust deed was not sufficient to pay the entire debt.

To this plea several obvious grounds of demurrer are readily suggested, whereof one will suffice.

Whatever may have been said when the note was made and the trust deed to secure it executed, the debt has been repeatedly renewed since, and since it was known (as is even shown by the plea) that the trust would not satisfy the debt. And again, since the alleged assurances and since the execution of the trust, the whole character of the debt has been changed. H. Bowers has been dropped, and A. Clevinger become the maker of a new note, with J. F. Keckley and Wm. Pannett as endorsers.

V. Pleas Nos. 5, 6 and 7 present the same question in different forms, and may properly be considered together.

Bowers was, prior to and on September 30th, 1872, the father-in-law of the defendant, J. F. Keckley.

The averment substantially is, that the note in suit is the residue, after various payments and renewals of the note for $2,278.12, drawn by H. Bowers and endorsed by said Keckley and Clevinger; that prior to September 30th, 1872, the date of said note, said Bowers had drawn sundry notes and forged thereon the names of said Keckley and Clevinger and others, as endorsers, and had procured the same to be discounted by the plaintiff, and that in lieu of the notes so forged, the note for

$2,278.12 was executed; that on and prior to said 30th September, 1872, the plaintiff, with knowledge of said forgeries, by its authorized agents and representatives, informed defendant Keckley that unless a new note, covering the amounts of said forged notes, should be made by said Bowers and endorsed by him and said Clevinger, that Bowers would be criminally prosecuted by plaintiff; and that the defendant endorsed said note under the fear of said threatened criminal prosecution of Bowers, and that all the subsequent renewals of said note, including the note sued on, were by him endorsed under like fear, and that there was no other consideration on his part for the execution of said note and renewals, and that said Bowers has not been prosecuted, &c.

This plea is asserted as personal to the defendant, Keckley, as the son-in-law of Bowers. The very natural inquiry here is, if this defence of *duress* attempted to be set up be true, what could have been the motive which prompted or induced Clevinger to go into this arrangement and continue in it until his death, which occurred since the commencement of this suit? He is not alleged to have been in any relation to Bowers other than that of a neighbor. The only answer is, that both Keckley and Clevinger (the former being also a son-in-law), for the meritorious purpose of aiding a neighbor who was in trouble, and in consideration that the bank would give Bowers time, and in further consideration of the fact that as values then stood, the trust deed aforesaid made the debt secure in their opinion, they took the risk and responsibility of endorsers for their friend. It is obvious that the defence offered by this plea was wholly inadmissible. The averments contained in this plea cannot be held to constitute *"duress of goods or fear of personal suffering."* Rob. Pr., Vol. V, p. 404; *U. S.* v. *Huckabee,* 15 Wall. 432. Duress that will avoid a contract must be menace to the person, or of trespass on lands, or loss of goods. Were the threats (if such they were) in this case, communicated to Keckley in respect to Bowers, his father-in-law, such as "to overcome

the mind and will of a person of ordinary firmness?" We think not. 2 Greenl. Ev., § 283 ; Chitty on Contracts, 217. The demurrer was also properly sustained as to each of these pleas.

VI. It only remains to consider plea No. 8 offered at the trial. This was a plea of usury in the terms prescribed by the statute. It was properly rejected as coming too late. "A defendant should be permitted to amend his pleadings or add to his pleas whenever justice requires it, if delay be not thereby occasioned, or if a good reason be shown for not having done so sooner." *Perkins' Adm'r* v. *Hawkins' Adm'r*, 9 Gratt. 653. In this case the delay was unreasonable, not only as to this plea (No. 8.), but as to the whole series of pleas offered in July, 1883, only one of which was then received, when, in fact, all of them ought to have been then rejected as too late, it appearing that the defendant had, for a long time theretofore, ample access to the alleged source of information—the books of the bank, of the contents of which said pleas were predicated.

There is no error in the judgments and rulings complained of, and the same must be affirmed with costs to the defendant in error, and so certified to the said circuit court of Frederick.

JUDGMENT AFFIRMED.