## ELDRED *v.* HART.

### Opinion delivered October 19, 1908.

USURY—EFFECT OF DEBTOR ACCELERATING PAYMENT.—Where a debt of which the principal and interest are payable in installments, is free from usury if paid according to the terms of the contract, the transaction is not rendered usurious by the debtor voluntarily paying the debt in full before some of the installments matured, although as a result the creditor would receive, in the aggregate, a sum amounting to more than the principal and the maximum legal rate of interest.

Appeal from Benton Chancery Court; *T. H. Humphreys,* Chancellor; reversed.

*McGill & Lindsey,* for appellants.

1. The contract was not usurious. When the highest rate of interest is contracted for, the interest which will accrue during the period of the loan can be divided up to suit the convenience of the parties, and separate obligations given for all or any part of it. 54 Ark. 566; 54 *Id.* 40.

2. The usury must exist in the inception of the contract; it cannot be made usurious by subsequent acts. 25 Ark. 258; 29 Am. & Eng. Enc. of Law, 460.

3. If payment of excessive interest depends on a contingency which is within the control of the borrower, and which he may avoid by paying the debt, the contract is not usurious. 29 Am. & Eng. Enc. of Law, 486-7; 46 Am. St. 192-4; 46 Ark.

364; 114 Am. St. 106; 109 S. W. 1024. See, also, 29 Am. &
Eng. Enc. of Law, pp. 481-1-3; 79 Va. 458; 99 Ga. 291.

*Rice & Dickson* for appellees.

. . The court properly held the contract usurious. 54 Ark. 40;
29 Am. & Eng. Enc. of Law (2 Ed.), 505; 51 Ark. 534, 546.

HART, J. This is an action brought by appellants in the
Benton Chancery Court against appellees to foreclose a mort-
gage on certain lands situate in said county.

In 1902 the appellees, C. L. Hart and Ella L. Hart, desired
to procure a loan of $2,500 and secure the same with a mortgage
on the lands in controversy then owned by Ella L. Hart. She
appointed the appellee, C. L. Hart, her husband, as her agent to
negotiate the loan. In furtherance of this purpose, he entered
into the following contract:

"Bentonville, Ark., April 28, 1902.
"To Holmes & Hibbard, Springfield, Mo.,

"I hereby appoint you my agent to negotiate for me a loan
of $2,500 for five years, to be secured by note or notes and deeds
of trust, in form required by you, upon my real estate described
in my application herewith. I agree to pay 8 per cent. per an-
num interest, payable semi-annually; of the said interest it is
understood that all the excess above 5½ per cent. per annum
(or 5 per cent. if you so elect) may be secured by separate notes
and a second deed of trust, leaving the principal notes and deed
of trust to draw only 5½ per cent. interest (or 5 per cent.
if you so elect). Upon said principal note I shall have the privi-
lege to pay $100 or any multiple thereof at the maturity of any
coupon by giving the holder thirty days' notice. That part of
the interest above specified which is secured by the second deed
of trust shall be payable to Holmes & Hibbard, Springfield, Mo.,
(semi-annually or in the annual installment). In consideration
of your services in the negotiation of said loan, I hereby agree
to pay you a commission of ...... per cent. on said sum, cash,
payable out of said loan. I also agree to pay the actual cost
necessary to procure an abstract of title, to perfect the same,
showing the deeds of trust to be the first lien, and to deliver
said abstract to you to be held until the loan is paid off. I also
agree to pay for recording the deeds of trust. And, further, in
case I shall refuse or be unable to execute the papers in ac-

cordance with said application, after the loan has been approved by you, I agree to pay the expenses which you have incurred in the examination of the title and security. And you are hereby authorized and instructed to pay off and discharge all existing liens on the above described lands with the proceeds of the loan applied for, paying me or my appointee the balance, after deducting the above-named commission and charges and money advanced to remove existing liens. I make W. H. Conine, of Bentonville, Ark., my local agent in the negotiation of this loan.

[Signed]    "C. L. Hart."

Pursuant to this contract, C. L. Hart and Ella L. Hart received from Holmes & Hibbard the sum of $2,500 in cash, and executed to Holmes & Gay or bearer their three promissory notes of the date of June 17, 1902—two for $1,000 each and one for $500, payable on or before July 1, 1907, and bearing interest at the rate of 5½ per cent. from date until paid, payable semi-annually on the 1st day of January and July of each year—said interest being evidenced by coupons attached to said notes. The notes had stamped upon them, "Privilege reserved to pay $100 or any multiple thereof at the maturity of any coupon," but this clause was not stamped upon the deed of trust, which was executed by them at the same time, conveying the lands in controversy to L. H. Holmes as trustee to secure the payment of said notes and interest coupons. The deed of trust was duly recorded June 20, 1902.

At the time of the execution and delivery of said notes and deed of trust, said C. L. Hart and Ella L. Hart also executed and delivered to said Holmes & Hibbard ten promissory notes of the same date for $31.25 each, payable to Harry Hibbard or bearer, and due each six months thereafter—that is, payable in January and July of each year from January, 1903, to July, 1907, inclusive, and each bearing six per cent. interest after maturity. The aggregate amount of these notes is $312.50. They were secured by a second deed of trust conveying the same lands to L. H. Holmes, trustee, which was recorded on the same day as the first deed of trust, but after the first deed. Neither of these ten notes nor the deed of trust given to secure the same contained the words, "or before," as to time of payment, nor any

privilege of paying any part of any note before it became due by its terms.

After the notes and deeds of trust were delivered to Holmes & Hibbard, they delivered the first mentioned three notes and deed of trust to Holmes & Gray, retaining the authority to collect the interest and principal as agents for said Holmes & Gay. The other notes payable to Harry Hibbard they retained as their own property.

The interest coupons due on said first three promissory notes January 1, 1903, and the first of said ten notes due at that time were paid to Holmes & Hibbard, when due, and shortly after the next interest coupons on the $2,500 and the next note for $31.25 became due, the said Ella L. Hart paid them with interest to time of payment and also paid the principal sum of $2,500. Said Holmes & Hibbard delivered up to them the note of $31.25 and procured from Holmes & Gay and delivered up to her said three notes for $2,500. They also had Holmes & Gay to execute a deed of release thereof. The remaining eight notes of $31.25 each, and the second deed of trust given to secure the same, were retained by said Holmes & Hibbard.

Afterwards in a division of notes between the said L. H. Holmes and Harry Hibbard, said eight notes and deed of trust fell to Harry Hibbard as his individual property. On the 11th day of December, 1903, he sold and assigned them to H. G. Peabody, of Green County, Illinois, who afterwards died intestate. Appellant John L. Eldred was duly appointed administrator of her estate by the probate court of said county.

After the execution of the deeds of trust and before the commencement of this action, Ella L. Hart and C. L. Hart, her husband conveyed the lands to other parties, who were duly made defendants.

The court held that the contracts and agreements in evidence constituted one transaction, and were a loan of $2,500 at eight per cent. interest per annum, payable on or before five years from date; that the payment of $2,500 with eight per cent. interest from date of notes till time of payment discharged the entire indebtedness represented by all obligations executed by them; that the notes sued on were thus paid off and discharged, and are not enforcible for want of consideration. That if the

notes sued on are considered separate obligation from other notes and enforcible after the payment of the principal obligation of $2,500 and a further sum equal to eight per cent. per annum thereon to date of such payment, such contract would be usurious and void. Accordingly, the complaint was dismissed for want of equity, and an appeal has been taken to this court.

It will be observed that the parties to the contract by its terms provided that the principal sum of $2,500 with interest on it at 5½ per cent. should become due on or before five years after date. In other words, it was payable within the prescribed time at the option of the borrower. The balance of $312.50 consisted of ten notes of $31.25, payable semi-annually without any conditions whatever. The intention of the parties, as shown by their written contract, was to provide for a loan for five years, with interest at the rate of eight per cent. and the time of payment was fixed by the notes. It is well settled that the interest which will accrue during the period of the loan may be divided up to suit the parties, and separate obligations given for all or any part of it, and this is usually done. *Scruggs* v. *Scottish Mortgage Co.*, 54 Ark. 566; *Banks* v. *Flint*, 54 Ark. 40.

If the parties had the right to divide up the principal sum and the interest which would accrue into separate obligations to suit their convenience, it necessarily follows that the time of payment of these separate obligations might be fixed at a given date, or an option might be given the makers within which to pay the notes, or some of the notes might be made payable on or before a given date, and the remainder payable on a fixed date. The latter plan was adopted in the present case, so then each note became a binding obligation payable according to its own terms.

It is claimed by appellees that this construction renders the contract usurious and void. If it appears that the contract in its inception was a result of a device or subterfuge by which the borrower was compelled, in order to get the money, to pay a larger amount of interest than is allowed by the statutes, the notes will be determined to be usurious. *Jordan* v. *Mitchell,* 25 Ark. 258.

In the present case Hart had the option to let the loan run for the entire period of five years; and if he had done so, the

undisputed facts show that he would have paid eight per cent. interest. The parties had the right, when the contract was made, to divide up the payments for interest to suit their own convenience, and to have separate obligations given for all or any part of it.

This seems to have been the plan adopted. If Hart had let the loan run for the full period of five years, he does not claim that he would have paid more than eight per cent. interest. He could not have been compelled to have paid it before that time He did not obligate himself to do so. He only obligated himself to pay the interest as it accrued before the principal sum fell due. So then it is undisputed that by the terms of the contract, as it could have been enforced against him, it was not affected with usury. The payment made by appellee Hart was voluntary, and was in the exercise of an option given him by the contract.

"Where a debt, including both principal and interest and due by installments, if paid according to the terms of the contract, is free from usury, the transaction is not rendered usurious by the voluntary payment of the debt in full before some of the installments matured, although as a result the creditor would receive, in the aggregate, a sum amounting to more than the principal and the maximum legal rate of interest." *Savannah Savings Bank* v. *Logan,* 99 Ga. 291; *Keckley* v. *Union Bank,* 79 Va. 458.

If the lenders had exercised their option to declare the whole indebtedness due for failure of the borrower to fulfill a certain stipulation of the deed of trust, still there would have been no usury, but in such a case a court of equity would treat the stipulation as a penalty and refuse to enforce it except upon a cancellation of the unearned interest notes, as was done in the case, cited by appellees, of *Dugan* v. *Lewis,* 14 S. W. (Tex.) 1024. This salutary rule was applied in this court in the case of *Chaffee* v. *Landers,* 46 Ark. 364, and in earlier cases cited therein.

As stated by Judge RIDDICK in the case of *Leonhard* v. *Flood,* 68 Ark. 162, "our law visits on a lender who contracts for usurious interest, however small, a forfeiture of his entire loan and the interest thereon. It follows from the plainest prin-

ciples of justice that such a defense should be clearly shown before the forfeiture is declared. For this reason usury will not be inferred where, from the circumstances, the opposite conclusion can be reasonably and fairly reached."

We are of the opinion that the chancellor erred in refusing to hold that the notices sued on were valid obligations of the appellees, C. L. Hart, and Ella L. Hart, and in dismissing the complaint for want of equity.

The decree is therefore reversed, and the cause remanded with directions to enter a decree in accordance with this opinion.