FOSTER *v.* UNIVERSAL C. I. T. CORP.

5-1947                                                    330 S. W. 2d 288

Opinion delivered November 16, 1959.

[Rehearing denied January 18, 1960]

*John D. Eldridge, Jr.* and *George P. Eldridge,* for appellant.

*Wright, Harrison, Lindsey & Upton,* for appellee.

JIM JOHNSON, Associate Justice. This is an appeal from a Chancery decree in which a conditional sales contract between the appellant, James H. Foster, and appellees, Universal C. I. T. Credit Corporation, and The Augusta Motor Company, Incorporated, was held not to be usurious. The facts, being stipulated, are not in dispute.

Appellant purchased from appellee, Augusta Motor ·Company, an automobile and agreed to the issuance of ·certain insurance policies. The conditional sales contract covered the cost of the policies. The contract was later assigned to appellee, Universal C. I. T. Credit Corporation. Subsequent to this transaction the insurance ·carrier cancelled a collision insurance policy against the automobile thereby causing appellant to be entitled to a *pro rata* return premium in the amount of $172.44. The contract allowed the appellee to purchase a single interest policy to protect its interest, which was done at a cost of $41.09, leaving a net amount of $131.35 due appellant. The appellee advised appellant of its action in a letter in which it also advised that the difference had been credited to the last installment of appellant's account, and further, that if appellant within the next 30 days obtained another policy to protect both of their interests they would cancel the single interest policy and credit appellant's account with the full return premium. Soon thereafter, appellant notified appellee by letter that he felt he was entitled to a reduction in his monthly payments. Appellee advised appellant that it could not revise the contract to change the monthly installments. Appellant then brought this suit to cancel the contract for usury alleging that he was overcharged by the amount of interest that would have been due on the return premium.

Among other points relied on by appellant for reversal, there is this one, which we find to possess merit: The contract is usurious in that the portion of the payments representing interest charges demanded by appellee exceed 10 per cent of the principal balance due after the cancellation of the insurance policy, and it

is the intention of the appellee to take and receive more than the legal rate of interest.

The appellant shows that the contract at its inception had in it the seeds of usury, because it allowed the appellee—under the circumstances that came into existence in this case—to retain some of appellant's money without promptly crediting such amounts on the maturing payments due on the contract.

To support his contention, appellant introduced the affidavit of Mr. Elbert R. Miller, Public Accountant, which stated that taking into consideration the cancelled insurance premium, the appellant would have been required to pay $1,383.22 under the contract, and that if the indebtedness had been recalculated as requested, the appellant would have owed twenty-one payments of $62.25, and one payment of $62.41, or a total of $1,369.66. Therefore, the contract with the appellee is usurious to the extent of $13.56. A calculation prepared electronically by Finance Publishing Company of Boston, Mass., also introduced by the appellant, differs from that of the accountant by only two cents.

The appellee, on the other hand, contends that the contract is not usurious, since the contract was not modified, and the refund of the unearned insurance premium represented merely a prepayment on the contract.

It must be conceded that appellee is correct when it states that the premium represents a prepayment on the contract since there was a provision in the contract which provided:

"Customer hereby assigns to holder any moneys not in excess of the unpaid balance hereunder which may become payable under such and other insurance, including return or unearned premiums, and directs any insurance company to make payment direct to holder to be applied to said unpaid balance and appoints holder as attorney in fact to endorse any draft."

According to the above provision in the contract, when any amounts are received by the appellee they are

to be applied on the account and in this sense it is the same as a prepayment option. Further conceding that the weight of authority is that prepayment of the principal before it is due does not in itself make a contract usurious, however, in applying the rule this court has recognized some limitation according to whether the prepayment is voluntary or involuntary. In *Eldred* v. *Hart,* 87 Ark. 534, 113 S. W. 213 (1908) this Court said at page 539:

"Where a debt, including both principal and interest and due by installments, if paid according to the terms of the contract, is free from usury, the transaction is not rendered usurious by the voluntary payment of the debt in full before some of the installments matured, although as a result the creditors would receive, in the aggregate, a sum amounting to more than the principal and the maximum legal rate of interest." *Savannah Savings Bank* v. *Logan,* 99 Ga. 291; *Keckley* v. *Union,* 79 Va. 458.

Also, 55 Am. Jur. § 48, at page 360 states:

"The comparatively few jurisdictions in which the question has arisen seem to be in accord in holding that a borrower's voluntary payment of a loan before maturity, made pursuant to a prepayment option in the contract, will not render the transaction usurious if the total interest received by the lender does not exceed the interest computed at the maximum lawful rate from the time the loan became available to the borrower to the absolute maturity date specified in the contract. Similarly, a provision in a loan contract privileging a borrower to pay the loan in advance of maturity ordinarily will not make the contract usurious on its face if its exercise is entirely optional with the borrower and cannot be demanded or required by the lender."

No cases have been called to our attention nor have we been able to find decisions in which the court held that involuntary prepayment would make the contract usurious under these circumstances. However, in view of the language of *Eldred* v. *Hart, supra,* and **55 Am.**

Jur., *supra,* in addition to the discussion in the annotation titled "Usury as affected by repayment, or borrower's option to repay loan before maturity," in 130 A. L. R. 73, the only logical conclusion which can be reached is that involuntary prepayment would make the contract usurious if it resulted in the interest exceeding the constitutional limitation. The issue in this case is, therefore, whether the prepayment on the debt was involuntary. According to the provision in this contract, the form of which was prepared by appellee, the appellant had no choice as to whether the sums applied as a payment on the indebtedness at the time they were received by appellee. Construing this contract, as we must, strictly against the party preparing it; *Yellow Cab Co. of Texarkana, Inc.* v. *Texarkana Municipal Airport,* 230 Ark. 401, 322 S. W. 2d 688; *W. T. Rawleigh Co.* v. *Wilkes,* 197 Ark. 6, 121 S. W. 2d 886; and taking into consideration the request made by appellant to have the monthly payments reduced, which was denied, we must conclude that the prepayment was involuntary. Therefore, in the absence of testimony refuting appellant's contention that a usurious rate of interest was charged on this contract, it is our opinion that the contract from its inception contained the seeds of usury which matured into usury upon the happening of the contingency, *i.e.,* the cancellation of the insurance policy.

Reversed.

Mr. Justice Holt dissents.