## FORD MOTOR CREDIT COMPANY
### v. N. B. YARBROUGH et al

77-412                                    567 S.W. 2d 96

### Opinion delivered June 12, 1978
### (In Banc)
[Rehearing denied July 17, 1978.]

*Griffin Smith,* for appellant.

*Charles L. "Chuck" Honey,* and *Spencer & Spencer,* by: *J. V. Spencer, Jr.,* for appellees.

CARLETON HARRIS, Chief Justice. Appellees, Raymond E. Yarbrough, N. B. Yarbrough, Jr., Walter E. Yarbrough, C. M. Yarbrough, Earl H. Yarbrough, and Roy Yarbrough, sued appellant Ford Motor Credit Company in chancery court, the various suits being filed between August 21 and August 29, 1975. The complaints alleged usury and sought a

declaratory judgment declaring the contracts void,[1] and "cancelling all balances owing thereunder." The suits were consolidated into one proceeding, and were heard October 29, 1976. By memorandum opinion dated May 25, 1977, the chancellor held the procedures used by appellant were usurious, and "plaintiffs are entitled to recover the equipment involved or its value together with damages for loss of use and all installment payments made . . . after the filing of these suits." Six separate decrees were rendered and from such decrees, Ford Motor Credit Company appeals.

The chancellor apparently studied this case intently and rendered a very fine written opinion, thoroughly explaining the case and giving clear and concise reasons for the result reached, and we shall liberally quote from that opinion, including the background, as follows:

"All of the above suits were brought against Ford Motor Credit Company alleging that certain contracts between the plaintiffs and Ford Motor Credit Company were void because of usury.

Plaintiffs rely on the case of *Foster* v. *Universal C.I.T. Credit Corp.*, 231 Ark. 230, 330 S.W. 2d 288, wherein it was held that a provision in a financing contract providing that refunds of insurance premiums shall be applied to the last maturing installments and not to the principal balance remaining unpaid or to currently maturing installments contains the 'seeds of usury.' It ripens into usury upon the crediting of such refunds to the last maturing installments (provided that such application causes interest rates to exceed 10% per annum.)

The contracts involved in these cases contain provisions substantially identical to the provision contained in the *Foster* contracts and give to Ford Motor Credit Company the right to so credit refunds of insurance premiums.

In fact, in the Ford Motor Credit Company con-

---

[1]There were eighteen different contracts.

tracts, it is specifically provided that such refund shall be applied to the last maturing installments.

The contracts fall into three separate categories:

1. Contracts where credit life insurance refunds and collision[2] insurance premium refunds were applied to the contracts;

2. Cases where the collision insurance premium refunds less the cost of single interest policies were applied to the contracts;

3. Cases where the entire collision insurance premium refund was applied to the contract.

In the three contracts involving credit life insurance premium refunds which were applied to the last maturing installments, the refunds were Roy Yarbrough, KWT-3 and KWT-4, $450 in each case and Earl H. Yarbrough, LDT-8, $719.11. The evidence shows that the manner of application of these refunds without considering the collision insurance premium refund made the contracts usurious in that the interest rates exceeded 10% per annum. When the effect of the collision insurance premium refunds was considered, the contracts, of course, were usurious by a larger amount.

In the second group of cases, certain of the contracts were rendered usurious by the crediting to the last maturing installments of the difference between the collision insurance refund and the cost of single interest insurance. Three of the contracts in that category, the contract between Ford Motor Credit Company and Eddie Ray Yarbrough, KJT-6, and the contracts between Ford Motor Credit Company and Walter E. Yarbrough, KMB-8 and LFP-5, were not rendered usurious by the application of that credit. All of the other contracts in this category were usurious after the application of said credits.

---

[2]Apparently referring to fire, theft, and combined coverage of physical damage on the vehicles.

In the third group of cases where single interest insurance coverage was not obtained, all of the contracts were rendered usurious by the crediting of the premium refund.

The accounts which were furnished by Ford Motor Credit Company and which were introduced in evidence show that these premiums were actually credited to the last maturing installments of the account on dates as set forth and shown on the statement of account furnished. In addition, Lyle VonFange, an official of Ford Motor Credit Company, testified to the effect that all such refunds are applied as a credit to the last maturing installment.

Since the refunds were actually credited to the last maturing installment and since such crediting was done under the provisions of the Ford Motor Credit Company contract and this rendered the contracts (except for those specified) usurious, the Court is of the opinion that this case comes squarely within the rules set forth in *Foster v. Universal C.I.T. Credit Corp.*"

We agree that this case is controlled by *Foster v. Universal C.I.T. Credit Corp.,* supra. In that case, Foster had purchased an automobile and agreed to the issuance of certain insurance policies, the conditional sales contract covering the cost of the policies. Universal C.I.T. Credit Corp was the assignee of the contract, and subsequently, the insurance carrier cancelled a collision policy against the automobile, resulting in appellant's being entitled to a pro rata return premium in the amount of $172.44. The contract allowed the company to purchase a single interest policy to protect its own interest, which was done at a cost of $41.09, leaving a net amount of $131.35 due Foster. The appellee advised appellant of this action, also informing him that the difference had been credited to the last installment of appellant's account, but that if appellant within the next 30 days obtained another policy to protect both of their interests, the company would cancel the single interest policy and credit appellant's account with the full return premium. Foster notified the company that he felt he was entitled to a reduction in his monthly payments, which was rejected by the company, and Foster then brought

suit to cancel the contract for usury, alleging that he was overcharged by the amount of interest that would have been due on the return premium. We held that the contract was usurious in that the portion of the payments representing interest charges demanded by appellee exceeded 10% of the principal balance due after the cancellation of the insurance policy, and the company had signified the intention to take and receive more than the legal rate of interest. We said:

> "The appellant shows that the contract at its inception had in it the seeds of usury, because it allowed the appellee — under the circumstances that came into existence in this case — to retain some of appellant's money without promptly crediting such amounts on the maturing payments due on the contract."

Subsequently, we added that "It is our opinion that the contract from its inception contained the seeds of usury which matured into usury upon the happening of the contingency, i.e., the cancellation of the insurance policy."

Appellant offered a CPA in an effort to refute the above evidence, a Mr. John Cobb, who testified that he found no basis for application of these insurance refunds to the note during the period of time involved, and that the credits to the last installments were nothing "more than suspense accounts." Here too, as in *Foster,* when the insurance company cancelled the policies on the several vehicles,[3] the company notified appellees that if they took out additional insurance, the refunds from the cancellation would be applied to such insurance. Walter Yarbrough, when asked if he applied for a refund, replied, "All of us did."[4]

---

[3] No reason is ever shown for the cancellation. It is interesting that the insurance carrier, American Road Insurance Company, is a wholly owned subsidiary of Ford Motor Credit Company.

[4] From the record: "All of us did. Shortly after that, right after my brother testified he didn't get the insurance, I sent a list of every serial number to each unit for Roy and each one of my brothers. We did buy a policy from the Insurance Agency at Little Rock and I had to get Roy's serial numbers and I called T. W. Mays who is the Branch Manager of Ford Motor Credit and he did send them to my Insurance Company at Little Rock." * * *

"Each one of us sat down and wrote a letter to Ford Motor Credit

We do not follow the testimony that the money was placed in a "suspense account." We find nothing in this record that indicates that a separate account was set up for these refunds; in fact, as already pointed out in our quotation from the court, the refunds were credited to the last maturing installments of the account, and Mr. VonFange of Ford Motor Credit Company, testified that all such refunds are applied as a credit to the last maturing installment. As mentioned, if no policy was obtained by the company, the entire refund was so applied, and in the instances where the company purchased single interest coverage (for its own benefit), the remainder of the refund was likewise applied. Since these refunds were so *applied,* it can make no difference that the company had notified appellees that refunds would be applied to any insurance obtained by appellees.

*Foster* was decided 19 years ago, and certainly a sophisticated company such as Ford, which has handled these types of policies for many years, is hardly in a position to defend on the basis of misunderstanding or mistake.

Affirmed.

FOGLEMAN, J., concurs.

JOHN A. FOGLEMAN, Justice, concurring. I concur because I do not think the chancellor's finding of fact that the premium refunds were actually applied on the indebtedness is clearly against the preponderance of the evidence. I do not think the mere fact that a mechanical credit to the last maturing installment was made would prevent the credit from being held in suspense. But when the contract terms and the actions of the parties are considered, I could not say that the chancellor's finding was against the preponderance of the evidence.

---

Company's address in Little Rock on Rodney Parham Road and we mailed them and we got a hearing that they had applied each to the tail end of the contract on each unit."

Mr. VonFange testified that no request was made to Ford Motor Credit for a refund of any kind.