### HUMPHREY *v*. McCAULEY.

Decided November 21, 1891.

1. *Usury.*
   A lender took a note bearing the highest legal rate of interest and a mortgage to cover the sum loaned and compensation for certain neighborly services usually performed without remuneration, and in this instance rendered without special agreement at the time as to compensation. It was not shown what charge was made for any particular service. In a suit to foreclose the mortgage, *held*, the note and mortgage were usurious and void.

2. *Usury—Recourse to prior valid security.*
   A valid security is not rendered invalid by being embraced in a new security tainted with usury; its surrender upon the execution of the new security is not a satisfaction and does not bar a recovery.

3. *Appropriation of payments.*
   Where any sum is due upon a lawful debt, out of or in connection with which a usurious contract has arisen, all payments made on either should be credited on the valid claim.

4. *Jurisdiction of circuit court.*
   A plaintiff cannot combine with a note exceeding one hundred dollars a note for less than that amount, to give the circuit court jurisdiction of the latter.

APPEAL from *Conway* Circuit Court in chancery.
JORDAN E. CRAVENS, Judge.

Mary E. McCauley brought suit to foreclose a mortgage of land executed to her by Susannah Humphrey and her son, R. A. Humphrey, to secure their certain promissory note for $311.50 with 10 per cent. interest. The defense of usury

was interposed. On the hearing the court decreed that the mortgage be foreclosed. Defendants have appealed.

From the evidence it appears that, on April 15, 1885, the Humphreys executed to B. A. Mayo their note, with mortgage, for $107.50 with 10 per cent. interest. At their request the note and mortgage were, on November 4, 1885, transferred to Patrick McCauley, husband of plaintiff, he paying Mayo the amount due. They also agreed to pay McCauley for his trouble in ascertaining whether the security was all right; and, in pursuance of this agreement, they executed to him on the date of said transfer their note for $10. Both of these notes and the mortgage were assigned to plaintiff by Patrick McCauley. On December 4, 1886, defendants executed to plaintiff their note for $152, due twelve months from date, bearing 10 per cent. interest; and also a mortgage to secure the same on the land above described. Defendants contend that this note was a renewal of the Mayo note with interest. Plaintiff insists that it was for a new loan of $100. It is agreed that it included the interest on the Mayo note, the $10 note given to Patrick McCauley, and a small sum for services of some vague character claimed to have been performed by Patrick McCauley.

On December 13, 1887, defendants executed the note and mortgage sued on. The note for $152 and the Mayo note and the accompanying mortgages were surrendered and cancelled. It is conceded by both parties that the new note for $311.50 includes the original Mayo indebtedness and a loan for $100, and that whichever of these amounts was embraced in the $152 note, the other amount was now added to make up the new note. In addition to these amounts and the accumulated interest on the notes, plaintiff testified that there was included an item of $22.50 which R. A. Humphrey requested her to pay to Patrick McCauley. With regard to this item the latter testified: "The $22.50 due me from R. A. Humphrey was for services rendered him at his request. I looked after his taxes and advised his mother through his brother, E. L. Humphrey, and I tried to assist her in selling

a cow; and this is the way he came to owe me the amount. I don't remember everything I did for him. I did not furnish any money with which to pay his taxes, but simply inquired about the matter for him."

After the execution of the last note and mortgage Patrick McCauley got from defendant $45 for alleged personal services. In explanation of this he testified: "The $20 I got from defendant Susannah Humphrey, and the $25 note were for personal services rendered the defendant, R. A. Humphrey. He owed me for various services, the number and kind of which I do not now remember. I remember I went twice to see if I could get some seed wheat for them. The distance I went to see about the wheat was two or three miles. I came to town for them two or three times. At that time I was living about five miles from town and about three and a half miles from the defendants. I can't remember just at this time any other acts of service for the defendants, but I know that I did a great many things for them which I cannot now recall."

*W. L. Moose* for appellants.

*W. S. Hanna* for appellee.

1. Usury must be proven. Tyler on Usury, p. 122.

2. A contract valid in its inception cannot be invalidated by any subsequent usurious transaction. *Ib.*, 111, 126, 402. There must be a corrupt agreement to take a greater rate of interest than is allowed by law. *Ib.*, 103; 41 Ark., 331. The expenses paid by the borrower cannot be added to render the contract usurious. Tyler on Usury, p. 136.

HEMINGWAY, J. It is conceded that the debt secured by the mortgage is greater than the sum lent with lawful interest; and the question is, whether the excess represents usurious exactions or sums lawfully due upon other accounts. 1. Usury.

The defendants say positively that the excess is made up of sums exacted by the lender's husband and agent in consideration of an extension of the debt for money loaned,

S C—10

while the lender and her husband state that it is made up of sums due the latter on other matters.

If the theory of the defendant is sustained, the mortgage and note are usurious; if the plaintiff's statement is true, she is entitled to the relief sought. There is certainly enough in the defendant's testimony to make a *prima facie* case, and to cast on plaintiff the burden of showing that the transaction is not tainted with usury. In this we think she has entirely failed. The alleged indebtedness arises from a character of service usually performed in a neighborly spirit without remuneration. It is not claimed that the services were rendered under any special agreement as to compensation, and it is not shown what charge was made for any particular service. The statement is general, that Pat McCauley "looked after R. A. Humphrey's taxes, advised his mother and tried to assist her in selling a cow;" and defendants deny that such services were performed. Upon consideration of all the evidence, we think the defendants' theory sustained, and that charges were made for Pat McCauley under an arrangement intended to cover a claim for usury. Substantially the same facts exist as to the mortgage for $152, executed December 4, 1886, and for the same reason we are constrained to hold that it is void.

**2. Recourse to prior valid security.** But the note and mortgage of April 15, 1885, were untainted with usury, and passed to plaintiff as valid and binding instruments; they were never paid or satisfied except by the subsequent usurious instruments. When a recovery is denied upon the latter for usury, is the plaintiff to be denied all relief, or will she be entitled to recover upon the valid contract? If she had originally loaned the money to the defendant upon a usurious agreement, she would be entitled to no relief, although it was used in paying the valid mortgage (*Trible* v. *Nichols*, 53 Ark., 271); but that is not this case. She purchased the valid securities, and subsequently, upon a usurious agreement, extended the time of payment, lent more money and took new securities. The taint of the subsequent illegal contract does not relate back

to or affect the original contract. Tyler on Usury, p. 126;
*Nichols* v. *Fearson*, 7 Pet., 104. It should therefore be en-
forced unless the right was lost by surrendering the securi-
ties. A surrender under the circumstances is not a satis-
faction, and does not bar a recovery. *Gerwig* v. *Sitterly*, 56
N. Y., 214; *Patterson* v, *Birdsall*, 64 N. Y., 294.

We are therefore of the opinion that the plaintiff is en-    3 Appropri-
titled to enforce the mortgage dated April 15, 1885, and to   ation of usurious
                                                               payments.
collect the balance justly due thereon. But a payment of
$30 was made upon the usurious security, and other pay-
ments were made to the plaintiff's husband and agent upon
exactions for extending the time of paying the mortgage.
The wife knew of, permitted and even aided her husband's
exactions, and is chargeable with the sums so paid, just as
if they had been paid directly to her. As long as any sum
is due upon a lawful debt, out of or in connection with
which a usurious contract has once arisen, all payments
made on either should be credited on the valid claim. *Payne*
v. *Newcomb*, 100 Ill., 611; *Rogers* v. *Buckingham*, 33 Conn.,
81; *Scruggs* v. *Scottish Mortgage Co.*, 54 Ark., 566.

As the note for $10 given to the plaintiff's husband for    4. Jurisdiction
examining the title to the mortgaged property is not secured  of circuit court.
by the valid mortgage, the questions argued with reference
to it are not before us for determination. Sec. 40, art. 7,
const. 1874; *Mannington* v. *Young*, 35 Ark., 287.

The judgment will be reversed and the cause remanded,
with directions to enter a decree in accordance with this
opinion.