Billy R. HAYES and Betty J. Hayes *v.*
FIRST NATIONAL BANK of Memphis, Tennessee

73-255                                                 507 S.W. 2d 701

Opinion delivered April 1, 1974
[Rehearing denied May 6, 1974.]

*Paul K. Roberts*, for appellants.

*Haley & Claycomb*, for appellee.

JOHN A. FOGLEMAN, Justice. The question presented by this appeal is whether "late charges" made on an installment purchase contract and a charge made for an extension agreement voided the entire debt for usury. We conclude that they did not.

Billy R. and Betty J. Hayes, husband and wife, purchased a mobile home from C. & G. Mobile Homes at Camden. After making a down payment, the balance of the purchase price to be financed amounted to $4,399 to which was added charges for insurance which brought the total to $5,010.40 to be paid in 84 equal installments. When the maximum time price differential allowable was added, the total to be paid under the contract amounted to $6,985.40, which was to be paid in installments of $83.16. Incorporated into the agreement was a clause by which the buyers agreed to pay a default charge equal to 5% of any payment in arrears for more than five days or $5, whichever was the lesser, but in no event to exceed the maximum default or delinquency charge permitted by law.

The contract was assigned to the First National Bank of Memphis, which furnished the forms on which it was made out. There were delinquencies in 24 payments which resulted in the making of "late charges" totaling $99.56. Appellants attempted to justify their tardiness by their alleged inability to obtain delivery of insurance policies covered by the con-

tract or to have defects repaired by the seller or manufacturer of the mobile home. On January 2, 1970, when two installments were past due appellee granted Mr. and Mrs. Hayes an extension for which it charged $41, which was one-half of 1% of the balance then due. It appears that "late charges" were debited to the Hayes account to be collected, without interest, after all other payments had been made. The extension agreement charge was paid prior to February 25, 1970. In effect, the extension agreement postponed the entire schedule of payments for 60 days, i.e., the maturity date of each subsequent payment was 60 days later than it otherwise would have been.

After a considerable period of delinquency, the bank instituted this suit to replevy the mobile home. Appellants answered, alleging that the conditional sales contract was void and unenforceable for usury, and filed a bond to retain the mobile home. In response to an interrogatory served upon them by the bank, the Hayeses stated that they contended the entire contract was usurious because no insurance policies were issued and because of the "late charges."

Judgment was rendered for $3,089.69 with interest from the date of the judgment (February 6, 1973) and attorney's fees and cost. The amount of the judgment was the balance of the account after unearned premiums from insurance were credited. This amount did not include the unpaid "late charges."

Appellants state one point for reversal. It is:

The court erred in failing to dismiss the plaintiff's case on the ground of usury.

Appellants argue that, since payments of $83.16 were delinquent for a total of only 1,079 days, the maximum legal charges would have been interest at 10% per annum on $83.16 for that period, which they calculate as $24.57. In considering this matter, we should say, at the outset, that the burden of showing that the contract was usurious rested upon appellants. *Nineteen Corporation* v. *Guaranty Financial Corp.,* 246 Ark. 400, 438 S.W. 2d 685; *Geyer* v. *First Arkansas Development Finance Corp.,* 245 Ark. 694, 434 S.W. 2d 301. In *Gever,* we

said, quoting from *Sawyer* v. *Dickson*, 66 Ark. 77, 48 S.W. 903, that the court should not presume a contract to be usurious. Actually, usury will not be presumed, imputed or inferred where an opposite result can be reached. *Feoples Loan & Investment Co.* v. *Booth*, 245 Ark. 146, 431 S.W. 2d 472; *Universal CIT Corp.* v. *Hudgens*, 234 Ark. 1127, 356 S.W. 2d 658; *Brown* v. *Fretz*, 189 Ark. 411, 72 S.W. 2d 765; *Brittian* v. *McKim*, 204 Ark. 647, 164 S.W. 2d 435. In determining whether a contract is usurious, it must be viewed as of the time it is entered into and it must be presumed that it will be performed according to its terms. *Sloan* v. *Sears, Roebuck & Co.*, 228 Ark. 464, 308 S.W. 2d 802; *Harris* v. *Guaranty Financial Corp.*, 244 Ark. 218, 424 S.W. 2d 355; *Foster* v. *Universal CIT Corp.*, 231 Ark. 230, 330 S.W. 2d 288, 75 A.L.R. 2d 1260; *General Contract Corporation* v. *Duke*, 223 Ark. 938, 270 S.W. 2d 918; *Sager* v. *American Investment Co.*, 170 Ark. 568, 280 S.W. 654; *Eldred* v. *Hart*, 87 Ark. 534, 113 S.W. 213; 55 Am. Jur. 331, Usury § 12.

We have held that a "late charge" is in the nature of a penalty for delinquency and does not render the transaction usurious, even when provided for in the instrument evidencing it. *Harris* v. *Guaranty Financial Corporation*, supra; *Carney* v. *Matthewson*, 86 Ark. 25, 109 S.W. 1024. See also, *Fhipps-Reynolds Co.* v. *McIlroy Bank & Trust Company*, 197 Ark. 621, 124 S.W. 2d 222. The rationale of these cases and others like them is that agreements for penalties to induce prompt payment are free from usury, because the buyer has it in his power to avoid the penalty by discharging the debt when it is due. *Carney* v. *Matthewson*, supra; *Chaffe & Sons* v. *Landers*, 46 Ark. 364; *Morgan* v. *Rogers*, 166 Ark. 327, 266 S.W. 273. This is not to say that an agreement of this sort will not be declared usurious if it is shown to be a mere contrivance to avoid usury and the real intention is a loan or forbearance of money and the taking of more than legal interest. See *Fhipps-Reynolds Co.* v. *McIlroy Bank & Trust Company*, supra; *Morgan* v. *Rogers*, supra; *Chaffe & Sons* v. *Landers*, supra; *Grider* v. *Driver*, 46 Ark. 50. But such an intention must first be made manifest from the agreement itself or from extraneous proof. There is nothing here to give the slightest indication that the charges were provided for in this contract with any such intention and the limitation placed on their amount would imply a contrary intention. If the penalty was too severe,

appellants were relieved of it by the court, and appellee did not appeal.

The payment for the extension is a different matter. There can. be no doubt that it is a charge for the forbearance of money, which simply means that the person to whom it is due foregoes payment in cash and waits for all or part of his money until a later date. *Sloan v. Sears, Roebuck & Co.*, 228 Ark. 464, 308 S.W. 2d 802; 91 C.J.S. 598, Usury § 23; see also, *Humphrey v. McCauley*, 55 Ark. 143, 17 S.W. 713. As such, it is to be treated as interest in testing for usury. See *Humphrey v. McCauley*, supra. See also, *Budget Plan of Baton Rouge v. Talbert*, 276 So. 2d 297 (La. 1973). We have not attempted to apply the test mathematically. however, because, even if the extension agreement was usurious, the original contract is not tainted by it, because the facts and circumstances existing at the time that contract was entered into, rather than the subsequent actions of the parties, determine whether it is usurious. *Humphrey v. McCauley*, 55 Ark. 143, 17 S.W. 713.

This being the case, there could be no justification for dismissing appellee's suit on the original contract, and the judgment must be affirmed.

BYRD, J., dissents.