**Alan WIDMARK, Appellant,**

v.

**NORTHRUP KING CO., Dave Goddard, Respondents.**

**No. C0–95–52.**

Court of Appeals of Minnesota.

May 2, 1995.

Review Denied June 14, 1995.

desires to make any new or different claim or counterclaim * * *."

Ronald R. Frauenshuh, Jr., Ortonville, for appellant.

Craig D. Diviney, Nancy Willis Burger–Smith, Dorsey & Whitney, P.L.L.P., Minneapolis, for respondents.

Considered and decided by AMUNDSON, P.J., PETERSON and HARTEN, JJ.

## OPINION

HARTEN, Judge.

Appellant challenges summary judgment in favor of respondent on appellant's claims of usury, misappropriation of a customer list, and misrepresentation. We affirm.

## FACTS

Appellant Alan Widmark is a farmer in Lincoln County. In 1986, Widmark began working as a dealer for StaufferSeeds, a seed company, selling seeds to local farmers. In 1987, respondent Northrup King Co. (Northrup) acquired StaufferSeeds and assumed its dealer contracts.

When Widmark first became a dealer for StaufferSeeds, he signed a "Dealer's Agreement," which incorporated by reference a document entitled "Conditions of Sale." The document provided that a "late charge" in the amount of 1.5 percent per month could be assessed on late payments from the dealer to the seller. A "Guarantee of Payment" signed by Widmark in 1991 for delivery of seed from Northrup also referred to the 1.5 percent "service charge."

In 1990, a Northrup representative referred a customer named Scott Krier to Widmark. Krier subsequently purchased seed from Widmark, but he defaulted on his payments. As a result, Widmark was unable to make timely payments to Northrup, and Northrup assessed late charges at the rate of 1.5 percent per month. Widmark had incurred similar late charges at various times throughout his relationship with Northrup. In September 1991, Northrup terminated that relationship.

Widmark sued Northrup in district court, alleging that Northrup (1) failed to pay Widmark certain commissions; (2) charged Widmark a usurious rate of interest; (3) misappropriated a list of Widmark's customers; and (4) through its agent, made misrepresentations to Widmark concerning Krier's ability to pay Widmark. The district court granted Northrup summary judgment on all claims. Widmark now appeals the summary judg-

ment as it relates to the usury, misappropriation, and misrepresentation claims.

## ISSUES

1. Did Northrup violate usury laws by assessing late charges of 1.5 percent each month that payment was past due?

2. Did the district court err in granting Northrup summary judgment on Widmark's claim that Northrup misappropriated the identities of Widmark's customers?

3. Did the district court err in granting Northrup summary judgment on Widmark's misrepresentation claim?

## ANALYSIS

Widmark challenges the summary judgment in favor of Northrup. Summary judgment is proper when the evidence shows that there is no issue of genuine material fact and that the moving party is entitled to judgment as a matter of law. *Fabio v. Bellomo*, 504 N.W.2d 758, 761 (Minn.1993). "On appeal, the reviewing court must view the evidence in the light most favorable to the party against whom judgment was granted." *Id.*

█ 1. Widmark first challenges the summary judgment in favor of Northrup on his usury claim. Widmark claims that the 1.5 percent "late charge" constituted a usurious rate of interest. Widmark seeks to recover all such interest paid to Northrup in accordance with the usury statute's provision for recovery. *See* Minn.Stat. § 334.02 (1992).

█ Four elements must be proven to establish a violation of the usury laws:

(1) a loan of money or forbearance of debt;

(2) an agreement between the parties that the principal shall be repayable absolutely;

(3) the exaction of a greater amount of interest or profit than is allowed by law; and

(4) the presence of an intention to evade the law at the inception of the transaction.

*Citizen's Nat'l Bank v. Taylor*, 368 N.W.2d 913, 918 (Minn.1985). Because usury laws are penal in nature, they should be construed

with reasonable strictness. *Seebold v. Eustermann,* 216 Minn. 566, 574, 13 N.W.2d 739, 744 (1944).

The last three violation elements appear to be present in this case. Widmark and Northrup had agreed that the cost of the seed was repayable absolutely. Northrup intended to assess 1.5 percent in late charges. If the assessment of those late charges was in fact usurious, Northrup's intention to evade the usury laws is presumed. *See Citizen's Nat'l Bank,* 368 N.W.2d at 919.

We assume for purposes of this opinion that a charge of 1.5 percent per month (18 percent annually) represents a greater amount of interest than is allowed by law. The maximum allowable rates appear in the usury statutes, Minn.Stat. §§ 334.01–.20 (1992). In the case of a loan or forbearance for agricultural purposes in an amount less than $100,000, the maximum rate is 4½ percent over the discount rate on 90–day commercial paper in effect at the Federal Reserve bank in Minnesota's district. Minn. Stat. § 334.011, subd. 1. The district court did not compute this maximum rate in its order; nor did Northrup contend in its summary judgment motion that 18 percent was in fact within the statutory limit under section 334.011.

Consequently, the only issue concerns the first element of usury—whether there was a loan of money or forbearance of debt. In making this determination, the court must look beyond the words of the agreement to its substance. *St. Paul Bank v. Ohman,* 402 N.W.2d 235, 238 (Minn.App.1987). The agreement provided that Widmark's account was due on June 30 of each year for seed purchased before May 31 of that year, and 30 days from the date of purchase for seed purchased on or after June 1. Northrup was entitled to assess the 1.5 percent "late charge" or "service charge" for each month payment was late. Northrup did not loan Widmark money; the issue thus turns on whether there was a forbearance of debt.

The district court based its ruling on the time-price doctrine, as enunciated by the supreme court in *Dunn v. Midland Loan Fin. Corp.,* 206 Minn. 550, 289 N.W. 411 (1939). In *Dunn,* the plaintiff purchased a car under a conditional sales contract involving payment over a period of time. *Id.* at 551–52, 289 N.W. at 413. The court rejected the plaintiff's usury argument, concluding that a seller may permissibly fix one price for cash and another for credit. *Id.* at 554, 289 N.W. at 413. The court held that

> [t]he fact that the credit price exceeds the cash price by a greater percentage than is permitted by the usury law does not make the transaction usurious for the very plain reason that the transaction is a sale and not a loan.

*Id.*

■ Northrup argues that the time-price doctrine applies because Widmark was merely charged a higher price for taking a longer time to pay the balance due. We conclude, however, that the doctrine does not apply here because there were not separate prices for cash and credit. *See Miller v. Colortyme, Inc.,* 504 N.W.2d 258, 261 (Minn.App.1993), *rev'd on other grounds,* 518 N.W.2d 544 (Minn.1994); *St. Paul Bank,* 402 N.W.2d at 238; *see also Rathbun v. W.T. Grant Co.,* 300 Minn. 223, 232–33, 219 N.W.2d 641, 648 (1974) (cautioning against any expansion of the time-price doctrine).

Nevertheless, we conclude that the "late charges" assessed by Northrup did not constitute a usurious rate of interest. Northrup never actually agreed to forego an immediate action on Widmark's account if it became overdue in exchange for a late charge. Unlike typical credit arrangements, Northrup did not encourage late payments in order to recover the additional charge; in fact, Northrup terminated its relationship with Widmark partially because of late payment. Consequently, we hold that there was no forbearance here within the meaning of the usury laws. *See Rangen, Inc. v. Valley Trout Farms,* 104 Idaho 284, 658 P.2d 955, 960 (1983) (usury statutes inapplicable in absence of express agreement for seller to forego immediate demand for payment or action on the account); *Wilson v. Dealy,* 434 S.W.2d 835, 837 (Tenn.1968) (same).

Our holding that a late charge in connection with a credit sale of this type does not violate our usury laws is buttressed by the

common law rule that a debtor by voluntary act cannot render usurious an otherwise valid transaction. *See Scientific Prods. v. Cyto Medical Lab.,* 457 F.Supp. 1373, 1379 (D.Conn.1978); *Hayes v. First Nat'l Bank,* 256 Ark. 328, 507 S.W.2d 701, 703 (1974); *Southwest Concrete Prods. v. Gosh Constr. Corp.,* 51 Cal.3d 701, 274 Cal.Rptr. 404, 798 P.2d 1247, 1250 (Cal.1990); *Rangen,* 658 P.2d at 960.

> Thus, where the terms of a contract permit the debtor to discharge himself by paying the sum lawfully due on or before a specified date, a provision imposing on him a more burdensome payment, although exceeding the rate of return allowed by law, in the nature of a penalty for a failure to pay by the date so specified, will not render the contract usurious.

47 C.J.S. *Interest & Usury* § 140 (1982); *see also* J.D. Perovich, Annotation, *Provision for Interest After Maturity at a Rate in Excess of Legal Rate as Usurious or Otherwise Illegal,* 28 A.L.R.3d 449 (1969). Such a provision may be usurious if inserted only to serve as a cover for usury. *Hayes,* 507 S.W.2d at 703; Perovich, *supra,* at 452. There is no evidence, however, that Northrup used the late charges to disguise an actual intent to make a usurious loan. We affirm the summary judgment in favor of Northrup on the usury claim. *See Northway v. Whiting,* 436 N.W.2d 796, 798 (Minn.App.1989) (summary judgment may be affirmed if there are no genuine issues of material fact and the decision is correct on grounds other than those cited by the district court).[1]

2. Widmark next claims that the district court erred in granting Northrup summary judgment on his claim that Northrup and its agent, respondent Dave Goddard, misappropriated a trade secret. Widmark claims that Goddard improperly gave Widmark's successor dealer a list of Widmark's former customers after Widmark's dealership had been terminated.

Widmark's cause of action is now governed by the Uniform Trade Secrets Act, Minn. Stat. § 325C.01–.07 (1992), which articulates, explains, and clarifies much of the common law concerning trade secrets and confidential information. *Electro–Craft Corp. v. Controlled Motion, Inc.,* 332 N.W.2d 890, 898 (Minn.1983). In *Electro–Craft,* the supreme court interpreted the Act to require a plaintiff to show both a trade secret and a misappropriation of that trade secret. *Id.* at 897. Widmark has failed to present sufficient evidence of either.

■ To qualify as a trade secret under the Act, the following elements must be met:

(1) the information must not be generally known nor readily ascertainable;

(2) the information must derive independent economic value from secrecy;

(3) the plaintiff must make reasonable efforts to maintain secrecy.

*Gordon Employment, Inc. v. Jewell,* 356 N.W.2d 738, 741 (Minn.App.1984) (citing *Electro–Craft,* 332 N.W.2d at 899). The identities of Widmark's customers were readily ascertainable by Northrup from the purchase orders placed by Widmark, which included the name and address of the particular customer for whom the order was placed. Widmark has not presented any specific evidence indicating that he made reasonable efforts to keep the identities of his customers secret.

■ Nor has Widmark made the requisite showing of misappropriation. "Misappropriation involves the acquisition, disclosure, or use of a trade secret through improper means." *Electro–Craft,* 332 N.W.2d at 903 (citing Minn.Stat. § 325C.01, subd. 3). The Act defines "improper means" to include

> theft, bribery, misrepresentation, breach or inducement of a breach of a duty to maintain secrecy, or espionage through electronic or other means.

Minn.Stat. § 325C.01, subd. 2. Widmark has not presented any competent evidence that Northrup acquired his list of customers through improper means. Widmark contends that Northrup's references to "your customers" in its dealership guide established Widmark's proprietary interest in his customers' identities. The parties, however,

---

1. In light of our holding, we need not address whether the late charges assessed by Northrup were lawful consumer credit sale finance charges under Minn.Stat. § 334.16 (1992).

t

did not so agree; on the contrary, the agreement specifically reserved the right of the seed company to appoint other dealers to cover all or part of the sales territory or to make direct sales to the customers. Moreover, Northrup assisted Widmark in finding some of the customers. Finally, Widmark has not established that Northrup had a duty to keep the list secret.[2] We affirm the summary judgment in favor of Northrup on the trade secret claim.

3. Finally, Widmark challenges the summary judgment for Northrup on the misrepresentation claim. Widmark claims that Northrup's agent, Mike McNeil, made a false representation concerning Krier's present ability to pay Widmark for seed. Northrup responds that the alleged statements were not representations of past or present fact; rather, they constituted mere speculation that Krier would pay in the future. *See Interroyal Corp. v. Lake Region Equip. Co.,* 308 Minn. 459, 241 N.W.2d 486 (1976) (fraud claim could not be based on manufacturer's statement that dealer would not lose money on a contract because the statement was only conjecture as to a future event, not an assertion of an existing fact).

In his complaint, Widmark alleged misrepresentations concerning Krier's past payment history with Northrup. The complaint is contradicted by Widmark's own deposition testimony, however. When asked what McNeil actually said, Widmark stated that McNeil told him that Krier would pay for the seed—clearly a prediction as to a future event. Widmark also stated that McNeil said Krier was "good for the money." The obvious inference is that McNeil was referring to Krier's eventual ability to pay, not his present financial situation. Consequently, Widmark's claim must fail because, according to Widmark's own sworn testimony, the alleged misrepresentations did not relate to a past or present fact. *See In re Strid,* 487 N.W.2d 891, 893–94 (Minn.1992) (setting out elements of fraud). We affirm the summary judgment in favor of Northrup on the misrepresentation claim.

### DECISION

The district court properly granted Northrup summary judgment on each of Widmark's claims.

**Affirmed.**

---

2. In the cases cited by Widmark in support of his argument, a duty to maintain secrecy was explicitly imposed by a provision in the defendant's employment contract with the plaintiff. *See Cherne Indus. v. Grounds & Assocs.,* 278 N.W.2d 81 (Minn.1979); *Aries Info. Sys. v. Pacific Man-* *agement Sys. Corp.,* 366 N.W.2d 366 (Minn.App. 1985), *pet. for rev. denied* (Minn. June 27, 1985). No such contract provision has been shown here.