## DUNBAR *v.* STATE BUILDING & LOAN ASSOCIATION.

### Opinion delivered May 24, 1926.

1. USURY—PROMISE TO PAY UPON CONTINGENCY.—Where a promise to pay a sum above legal interest depends upon a contingency and not upon the happening of a certain event, the loan is not usurious.

2. BUILDING AND LOAN ASSOCIATION—USURY.—Where a borrower from a building and loan association was required to subscribe to stock, for which he paid in monthly installments, together with interest on the loan, the paid-up stock to be surrendered for the loan, and the borrower was entitled to the profits on the stock while it was maturing, the contract was not usurious, though the interest exceeded 10 per cent., since there was a hazard or contingency in the contract.

Appeal from Pulaski Chancery Court; *John E. Martineau,* Chancellor; affirmed.

*George M. Heard, James E. Hogue* and *Minor Wallace,* for appellant.

*Gray, Burrow & McDonnell,* for appellee.

HUMPHREYS, J.    Appellee instituted this suit against appellants in the chancery court of Pulaski County to foreclose the mortgage on property described therein for $1,962.95, which, together with a bond or note, was executed to it by Annie Spears Dunbar, one of appellants,

on the 10th day of November, 1922.   It was alleged in the bill that said appellant had made default in her payment, and that, under the terms of the bond and mortgage, the total amount aforesaid had become due and payable and subject to judgment and foreclosure.

Appellants filed an answer denying the material allegations in the bill, and, by way of further defense, pleading that the contract was usurious and void, and praying for a cancellation and annulment thereof, and for the dismissal of appellee's bill for the want of equity.

The cause was submitted to the court upon the pleadings and an agreed statement of facts, which resulted in a personal judgment against Annie Spears Dunbar for $1,951.83, with interest at the rate of 10 per cent. per annum from May 10, 1923, until paid on $1,921.90; with interest at the rate of 6 per cent. per annum from said date until paid on $29.63; and a decree of foreclosure against said property, and an order of sale thereof to apply on said judgment, from which judgment an appeal has been duly prosecuted to this court.

The agreed statement of facts upon which the judgment and decree was rendered is as follows:

"The plaintiff, State Building & Loan Association, is a corporation organized under and by virtue of the laws of the State of Arkansas, and is engaged in what is generally known as 'building and loan' business, which is to accumulate funds upon the sales of its building and loan stock and lend them to its stockholders at interest to be repaid by the borrowers in monthly installments, along the usual and customary lines of such associations. That its interest earnings on loans, after the payment of overhead and operating expenses, is prorated among its borrowing and non-borrowing stockholders alike and in equal proportions.   That it maintains an office in the city of Little Rock, in the State of Arkansas, with a manager in charge.   That it keeps stenographers, bookkeepers and other clerical help and assistants in its employ, all at the expense of the corporation, and that its

officers and members of its board of directors are paid for their services out of the earnings of the corporation.

"That the defendant, Annie Spears Dunbar, some time prior to November 10, 1922, applied to the plaintiff for a loan of two thousand dollars ($2,000), and that the plaintiff agreed to make said loan of $2,000 to the defendant on condition that the defendant would take and subscribe to stock in the plaintiff's corporation of the face value of $2,000, and carry said stock to maturity by paying ten dollars on said stock each month until it should mature, and then surrender the matured stock to the plaintiff in payment and satisfaction of the loan. That these terms were accepted by the defendant, and she received a loan of $2,000 from the plaintiff, and executed and delivered to the plaintiff on that date her note and bond, a copy of which note and bond is attached to the plaintiff's complaint and marked Exhibit 'A' thereto, and is by reference made a part of this statement of facts the same as if set out in full herein.

"That said defendant Annie Spears Dunbar, for the purpose of securing said loan, also executed and delivered to the plaintiff a mortgage upon the following described property situated in Pulaski County, Arkansas, to-wit: Lot ten (10), block nine (9), R. C. Butler's Addition to Little Rock. The original of said mortgage is attached to and made a part of the complaint which the plaintiff has filed in this case, and is incorporated as a part of the statement of facts by reference; it was filed and recorded in the Pulaski County recorder's office on November 13, 1922, in record book 178, page 467.

"That at the time of making the loan, as stated in the foregoing copy of bond, defendant Annie Spears Dunbar subscribed for twenty shares of stock in Class 'C', totaling the sum of $2,000 of said State Building & Loan Association, the subscription for said stock being a condition upon which the plaintiff agreed to make the loan, pledging the stock as collateral for said sum of money borrowed. That the plaintiff estimated but did

not guarantee that said stock would mature said sum in 123 months from October 1, 1922.

"That it was agreed between the plaintiff and the defendant that monthly payments would be made by the defendant at the rate of twenty-six and 70/100 dollars ($26.70) per month, of which ten dollars ($10) should be applied as principal on the purchase price of the stock, and sixteen and 70/100 dollars ($16.70) as interest on the loan until her monthly payments of ten dollars ($10) each on her stock, augmented by such portion of the interest and profits as she was entitled to receive as a stockholder in said corporation, should equal the sum of $2,000, at which time said stock was to be considered as having matured. It was also agreed that the defendant should pay the past dues on the stock purchased by her as of the time when the series was started by said plaintiff, which, in this instance, was October, 1922.

"That the plaintiff gave to the defendant a pass book in which was receipted such payments as she made to the association. That on November 10, 1922, there was deducted from the amount paid to her on the loan, the sum of $36.70; that on May 1, 1923, she paid to the plaintiff the sum of $20 dues, $33.50 interest, and $2.65 fines; that on September 10, 1923, she paid $30 dues, $50.10 interest, and $4.80 fines. Said defendant's pass book is credited with payments of principal of $10 for the month of October, 1922, and principal of $10 and interest $16.70 for the months of November, December, 1922, and January, February, March, and April, 1923. Said defendant was not charged a fine for the months of October or November, 1922, and only paid the fines as hereinbefore set out for the nonpayment of dues at the time specified in the by-laws, which fines are authorized under the by-laws.

"At the time of receiving the loan, defendant was charged with the following items of expense, which were deducted from the amount of the loan: cost of bringing abstract down to date, $2.70; attorney's fees, $10; for

appraisal of value of property mortgaged, $3; recording of mortgage, $1.75; notary fee, 25 cents.

"That the by-laws of the plaintiff under article VI contain the following provisions:

" 'Section 1.   The funds of the association shall be loaned to its members on real estate security, or on its stock, and the association shall have the first lien thereon.

" 'Section 2.   A member desiring a loan shall file a written application with the secretary, which applications shall be numbered in the order of their receipt, and they shall take precedence in such order, other things being equal.   He shall also furnish an abstract of title, pay for the examination of the same and all other expenses thereof, which, unless otherwise provided for, may be deducted from the amount of the loan.

" 'Section 3.   Loans on real estate may be repaid as a whole or in part at any time on thirty days' notice, but in no case can a partial payment be made for less than one or more full shares; also the stock for the original amount of the loan shall be kept in force until all the loan is repaid.'

"That after the time set forth above said defendant made no other payments, and after demand for payment plaintiff filed this suit on March 27, 1924.   Prior thereto plaintiff, on December 11, 1923, paid improvement district taxes assessed against said above-described property, in the sum of $7.68; on December 1, 1924, $18; on March 26, 1924, for bringing abstract of title on said property down to date, abstracter's fee, $4.25; and charged these items against the said defendant.

"That any rights, titles, or interests which any of the other defendants may have in and to said above described property were acquired subsequent to November 13, 1922, and the date of the recording of the mortgage.

"That at the time of making the loan plaintiff advised said defendant, Annie Spears Dunbar, that it estimated that the stock for which she subscribed would mature the sum of $2,000 in 123 months, if she continued

to pay the monthly payments of $10 on principal and $16.70 as interest.''

The test laid down by this court to determine whether a loan of money by a building and loan association to a stockholder therein is usurious and void is to ascertain whether the contract is an unconditional agreement to pay more than 10 per cent. per annum for the use of money or whether an agreement to pay more is dependent upon a contingency. Before the agreement can be characterized as usurious, a contract to pay more than 10 per cent. per annum for the use of money by a stockholder therein must depend upon the happening of a certain event. If dependent upon a contingency, the agreement is not such a usurious contract as is inhibited by our Constitution and laws. If there is an element of uncertainty and hazard in the contract relative to the amount of interest to be paid, this contingency excludes the idea of usury in the agreement. In giving expression to the rule applicable to this class of contracts in the case of *Reeves* v. *Building & Loan Assn.*, 56 Ark. 316, this court quoted from the syllabus in the case of *Spain* v. *Hamilton's Admr.*, 1 Wall. 604, as follows:

''Where the promise to pay a sum above legal interest depends upon a contingency and not upon the happening of a certain event, the loan is not usurious.''

In the contract before us it is clearly provided that Annie Spears Dunbar should receive, in the settlement of her loan, her full share of the profits which the association might earn during the period her stock was maturing. Although she was required to pay a small amount as interest in excess of 10 per cent. per annum, the interest payments, had she made them, would have automatically been reduced by earnings of the association upon her monthly payments in case of a full performance of the contract on her part. Just what interest she might have paid under the contract had she matured her stock and liquidated her loan by a surrender thereof cannot be computed, as the time her monthly payments were to continue was dependent upon the maturity of her

stock through the payment of dues and the net amount earned on her monthly payments. If loaned out immediately and continuously, the monthly interest payments might have been compounded for her benefit many times. This element of hazard or contingency in the contract eliminated any usury from the agreement.

We think the instant case is ruled by the principles announced in the case of *Reeves* v. *Building and Loan Association, supra.*

No error appearing, the decree is affirmed.