SINGLEY v. NORMAN.

4-6370                                          150 S. W. 2d 947

Opinion delivered May 19, 1941.

M. P. Watkins, for appellant.

L. G. Minton, for appellee.

HOLT, J.  Appellee, George Norman, sued appellant, Guy Singley, in the Poinsett chancery court on a note in the principal sum of $200 and sought to foreclose the lien of a chattel mortgage on certain livestock which had been executed by appellant as security. Appellant defended

on two grounds: (1) That the note and mortgage sued on grew out of a gambling transaction; and (2) that the interest charged amounted to usury. Upon a trial the chancellor found the issues in favor of appellee and entered a decree accordingly. This appeal followed.

The material facts on this record are practically undisputed. The parties to this litigation were close personal friends, and gambled when the opportunity afforded.

On March 15, 1940, Singley went to his friend, Norman, and informed him of a dice game, then in progress, and asked for a loan of $50 with which to participate in the game. Norman readily agreed to make the loan and accordingly they went to a justice of the peace, who prepared a note in the amount of $50, dated March 15, 1940, due and payable the following day and with interest at ten per cent. A chattel mortgage on certain livestock was prepared at the same time and both instruments were signed by appellant.

Following the execution of these papers Norman turned over to Singley $49, retaining $1 out of the $50 loan as a bonus. Together they immediately went to the game where they both participated, with other gamblers, and Singley lost the borrowed money. Singley then sought and secured another loan of $50 from Norman. When appellant received this second loan from appellee they went again to the justice of the peace and the note and mortgage were changed by striking out $50 and writing immediately thereunder $100.

Singley and Norman again entered the game and proceeded to gamble with each other and with others until Singley lost all of this second loan except $1.50 which he had paid appellee, in part as a bonus for the money, and for taxi fare.

Appellant, still possessed with the gambling urge, asked appellee for another $50 loan. Appellee agreed and together they visited the justice of the peace for a third time where the note and mortgage were raised from $100 to $150, thence back to the game Guy and George

went. Again they played as before and again Singley lost all of the third loan. Norman agreed to increase his loan to Singley another $50. Again they visited the justice of the peace, another alteration was made in the note and mortgage, making the final sum therein $200. With this fourth loan in his pocket, they went back to the game and proceeded in like manner to gamble until Singley lost this loan also, thus making his total losses $200, the amount of the note and mortgage.

At this point it appears that Singley suddenly lost his previous urge to gamble, but unfortunately for appellee he also lost all desire to repay his friend, appellee, the money loaned and when called upon to pay sought to escape payment by the two legal defenses indicated above.

Our lawmakers in an effort to prohibit gambling, such as is presented by this record, have enacted legislation making it an offense and punishable by fine. Section 3330, Pope's Digest. And in order further to discourage the practice, § 6115, Pope's Digest, was also enacted, providing among other things, that all notes and securities, "where the consideration or any part thereof is . . . for money or property lent to be bet at any gaming or gambling device, or at any sport or pastime whatever, shall be void."

Here the evidence clearly shows that appellee loaned the money in question to appellant "to be bet" in a dice game, a form of gambling. Not only did appellee admit that he knew that appellant was borrowing the money for the purpose of gambling, but appellee actually participated in the very game with appellant and others until appellant had lost the money in question and we think it clear that appellee loaned the money to appellant with the purpose, knowledge and intent that it was "to be bet" or used at gambling within the plain terms and meaning of § 6115 of Pope's Digest, *supra,* and therefore the note and mortgage herein are void and the trial court erred in holding otherwise.

The rule of law governing here is clearly stated in Daniel on Negotiable Instruments, volume 1, p. 289, § 200, in this language: "Money lent for the purpose of

being used in gaming cannot be recovered back by the lender; and a bill or note given for such purpose is, as between the parties, void. But where it was not used for the purpose for which it was lent—it was held that it might be recovered. It is fully settled that the repayment of money lent for the express purpose of accomplishing an illegal object cannot be enforced. But knowledge that the money was to be so used must be distinctly proved; and the mere fact that the borrower was a gambler, and that any one might expect him to game with the money, would not suffice, of course, to show it.''

In *Tatum* v. *Kelley*, 25 Ark. 209, this court said: ''No principle is better settled than that contracts that contravene the law are void, and that courts will never lend their aid in enforcing them. Illegal contracts are not such only as stipulate for something that is unlawful; but, where the intention of one of the parties is to enable the other to violate the law, the contract is corrupted by such illegal intention, and is void.'' See, also, *Rumping* v. *Arkansas National Bank*, 121 Ark. 202, 180 S. W. 749.

We are also of the view that the note and mortgage are void for the reason that appellee has charged and taken on the note herein a greater rate of interest than the lawful rate of ten per cent.

The Const., art. 19, § 13, provides: ''All contracts for a greater rate of interest than ten per centum per annum shall be void as to principal and interest, and the General Assembly shall prohibit same by law; . . . .''

Section 9402 provides: ''All bonds, bills, notes, assurances, conveyances, and all other contracts or securities whatever, whereupon or whereby there shall be reserved, taken or secured, or agreed to be taken or reserved, any greater sum or greater value for the loan or forbearance of any money, goods, things in action, or any other valuable thing than is prescribed in this act shall be void.''

We quote from appellee's testimony: ''Q. George, at no time did you charge a bonus on money you loaned

to Guy Singley? A. I charged him $1 on the first $50, in other words he gave me $1, and on the second $50 and for the drive up Mr. Collins he gave me $1.50. On the other $100 I didn't charge him anything."

The four loans here were reduced to and embodied in one transaction, and evidenced by the note here in the total amount of $200, with the mortgage as security.

By appellee's own admission he is attempting to take from appellant more than a ten per cent. interest charge. Here he received approximately $2.50 bonus in excess of ten per cent. interest, however, the amount of the exaction or bonus appellee received in excess of ten per cent. interest is not material. It is sufficient if appellee took anything in excess of ten per cent.

In *Briggs* v. *Steele*, 91 Ark. 458, 121 S. W. 754, this court said: "To constitute usury, there must either be an agreement between the parties by which the borrower promises to pay, and the lender knowingly receives, a higher rate of interest than the statute allows for the loan or forbearance of money; or such greater rate of interest must be knowingly or intentionally 'reserved, taken or secured' for such loan or forbearance. It is essential, in order to establish the plea of usury, that there was a loan or forbearance of money, and that for such forbearance there was an intent or agreement to take unlawful interest, and that such unlawful interest was actually taken or reserved."

And in *McHenry* v. *Vaught,* 150 Ark. 612, 234 S. W. 995, it is said: "The lender may receive for the forbearance of money ten per cent. per annum and no more."

For the errors indicated, the decree is reversed, and the cause remanded with directions to dismiss appellee's complaint for want of equity.