BROWN et al., Appellants, v. REDFIELD BUILDING, LOAN AND SAVINGS ASSOCIATION, Respondent

(9 N. W.2d 781.)

(File No. 8582.   Opinion filed May 22, 1943.)

W. F. Bruell, of Redfield, for Appellants.
Sterling & Clark, of Redfield, for Respondent.

SMITH, J.   Invoking the provisions of our statutes on usury, plaintiffs seek a decree cancelling their certain notes

and a mortgage held by defendant, a corporation ·chartered under SDC 7, and a judgment for money representing alleged overpayments on the principal amount of their obligations. They were denied relief below and have appealed.

The loan transactions about to be described are characteristic of the dealings between building and loan associations and their borrowing members. In each instance a sum of money was advanced by the association, and the member executed a promissory note therefor secured by real estate mortgage on their Redfield, South Dakota, home. At the same time the member subscribed for shares of the association's installment capital stock of an aggregate par value at least equal to the principal amount of the loan. The note and mortgage provided for a monthly payment equal to the sum of the interest and non-competitive premiums fixed by the by-laws, and the dues on the stock. As payments were made interest and premium were credited to the interest account, and dues to the purchase price of the stock. In addition to· these credits for dues, the members' apportionment of the profits of the association, in the form of dividends on stock, were credited on the purchase price of the stock as they were declared. The scheme contemplates that when the accumulation of dues and dividends so credited shall have matured the stock, it should be cancelled and its par value applied in payment of the loan. For convenience in making subsequent reference thereto we number the transactions.

Transaction No. 1. On June 5, 1925, plaintiffs borrowed $2,500 from defendant. To qualify for this loan, they subscribed for thirteen shares of the Twentieth Series of the association's installment stock of a par value of $200 per share. The contract provided for a monthly payment by plaintiffs of $36.75 representing dues on stock in the sum of $13.00, and $23.75 interest and premium. Treating the interest and premium as interest the parties agree that the contract provided for interest at the rate of eleven per centum per annum. In March 1928 the association made a .voluntary reduction of the interest and premium charged

its borrowing members to the rate of nine per centum per annum.

Transaction No. 2. On August 22, 1928, plaintiffs borrowed an additional amount of $800 from defendant secured by a junior mortgage. To qualify for this loan plaintiffs subscribed to eight shares of the Twenty-Third Series of defendant's installment of stock of the par value of $100 per share. The contract provided for a monthly payment which included dues on the stock, and premium and interest at the rate of nine per centum per annum.

Transaction No. 3. On May 29, 1934, plaintiff's borrowed $1600 from the defendant. To qualify for this loan they subscribed for sixteen shares of the association's installment stock of the Twenty-ninth Series of a par value of $100 per share. As a part of this transaction, by agreement of the parties, the installment stock for which plaintiffs had subscribed in transaction one and two was retired, and the aggregate amount of dues paid thereon and of the accumulated dividends and profits apportioned thereto was credited respectively upon loans one and two, leaving a balance due on those loans of $1,309.55. On that day the old notes were marked paid and delivered to plaintiffs, the mortgages securing the same were satisfied, and a new note and senior mortgage were executed. The difference between the above balance of $1,309.55, plus the expenses of conveyancing, recording, etc., and the face of the new loan was paid to plaintiffs in cash. In this transaction plaintiffs received an apportionment of profits to the stock acquired in transaction No. 1 of $333.55 and to the stock acquired in transaction No. 2 of $46.80. The new loan reserved interest and premium at the rate of 9.7 per centum per annum, payable monthly.

Transaction No. 4. On April 12, 1937, because of delinquencies, plaintiffs' debt to defendant under transaction No. 3 had mounted to a total sum of $2,005.80 and the books of defendant evidenced a credit for dues and unapportioned earnings in the amount of $337.12. By mutual agreement the stock then held was retired and the above described

credit was applied on the indebtedness. Thereupon, defendant advanced plaintiffs cash in the sum of $31.32 to bring their net indebtedness up to the round sum of $1,700, and the parties entered into a written agreement of extension and conversion, charging the loan "to a non-profit, non-participating, direct reduction loan." In this contract plaintiffs agreed to discharge the principal together with annual interest at the rate of 7.92 per centum in monthly installments of $16.17, and that the mortgage executed in connection with transaction No. 3 should stand as security for the indebtedness therein described.

At the time of transaction No. 1, the statutes provided:

"The highest rate of interest which it shall be lawful for any person to take, receive, retain or contract for in this state, shall be ten per cent (10%) per annum, and at the same rate for a shorter time." Ch. 211, Laws 1923.

"No person, firm or corporation shall exact upon any loan, secured by any real estate mortgage for interest upon said loan and commissions for negotiating the same, a greater sum in the aggregate than ten per cent per annum upon the actual amount of money secured by such borrower upon such loan." § 1041, Rev. Code 1919.

"Any person or corporation contracting to receive a greater rate of interest or discount than twelve per cent upon any contract verbal or written, shall forfeit the whole of said interest so contracted to be received, and shall be entitled only to receive the principal sum due; and if any part of such interest shall have been paid it may be recovered in an action for that purpose, or set off in an action to recover such principal." § 1044, Rev. Code 1919.

By Ch. 123, Laws 1933, effective July 1, 1933, the maximum rate described in foregoing sections was changed to eight per cent per annum.

In 1925 by an act entitled, "An Act to amend section 9078 of the Revised Code of South Dakota for 1919, relating to fines and interest in mutual building and loan associations exempting the same from usury and providing for the collection thereof," it was among other things provided, "* * *

no such' fine, or interest· on loans or other advances to its members shall be deemed a violation of any statute against the taking of usury, and may be enforced and shall be collectible from such member of the association in accordance with the provisions of its by-laws. * * *" Ch. 107, Laws 1925. This enactment became effective July 1, 1925, which will be observed to be less than a month after the consummation of transaction No. 1. This provision has been carried forward in our law and appears as SDC 7.0414.

The plaintiffs take the position that these loans are so related that the usurious taint of all prior transactions inheres in the notes and mortgage now held by defendant; that all payments must be applied to principal; that the indebtedness has been paid; and that they are entitled to a decree of cancellation and a money judgment for an alleged balance as an overpayment of the principal sums.

■ We reject as untenable the alternative contention of plaintiffs that the legislature did not intend by Ch. 107, Laws 1925, supra, to exempt building and loan association contracts with their borrowing members from the usury statutes, or if the legislature did so intend that the· enactment trenches on Section 18 of Article VI of the Constitution. When the act is read in connection with its title, we think the intention of the legislature is too clear to require discussion. We align ourselves with the courts who discover in the building and loan association scheme of mutual loans to its members, involving as it does on the part of the borrowing member a dual relation of borrower and of participant in the profits from loans to himself and other members, a reasonable basis for legislative classification, and therefore hold that the statute is not repugnant to the cited constitutional provision. 12 C. J. S., Building and Loan Associations, p. 487, § 77; 9 Am. Jur. 139, § 52.

■ In anticipation of the foregoing conclusions, plaintiffs assert that the original loan contract, which, as we have observed, antedated the effective date of Ch. 107, Laws 1925, supra,. was usurious and that its taint permeated all of the described subsequent contracts. To this contention the de-

fendant makes response that, if the usurious character of the original contract be conceded (but see 12 C. J. S., Building and Loan Associations, p. 487, § 77, and Dunbar et al. v. State Bldg. & Loan Ass'n, 171 Ark. 232, 284 S. W. 2), the plaintiffs are estopped by their conduct in participating in the profits which arose from the application of this same rate of interest and premium to all loans of the association to borrowing members. In making this response defendant points to transaction No. 3, wherein plaintiffs received credit for $333.55 as an apportionment of profits to their thirteen shares of the Twentieth Series of capital stock. The terms of the contract on which plaintiffs predicate this contention were fixed by the by-laws for the mutual benefit of all members, including plaintiffs, and were applied to all borrowing members. The inequity of permitting plaintiffs to advantage themselves by urging the usury statute after accepting a share in the profits which arose from the application of this rate to their associates in the mutual venture is manifest. The view of the trial court that this conduct estopped plaintiffs gains our approval, and is supported by authority. Tootle v. Singer, 118 Iowa 533, 88 N. W. 446; Jackson Bldg. & Loan Ass'n v. Leonard, 74 Miss. 810, 21 So. 53; Cover v. Mercantile Mut. Bldg. & Loan Ass'n, 93 Mo. App. 302; 12 C. J. S., Building and Loan Associations, p. 487, § 77.

The separate contentions of Marie Brown do not merit discussion.

The judgment and order of the learned trial court are affirmed.

All of the Judges concur.