## RYDER TRUCK RENTAL, INCORPORATED
### *v.* J. B. KRAMER

77-263                                          563 S.W. 2d 451

Opinion delivered March 27, 1978
(In Banc)

170

*Thaxton, Hout & Hartsfield,* by: *Larry Hartsfield,* for appellant.

*Murphy, Blair, Post & Stroud,* by: *H. David Blair,* for appellee.

GEORGE HOWARD, JR., Justice. We are to determine whether the trial court's holding was proper which granted a summary judgment resulting in the cancellation of an installment note on the grounds that the note was usurious.

## THE FACTS

On April 13, 1973, appellee, J. B. Kramer, signed an installment note, as president of J. B. Kramer Grocery Company, Inc., and in his individual capacity as guarantor, promising to pay to the order of appellant, Ryder Truck Rental, Inc., the sum of One Hundred Seventy-one Thousand and no/100 Dollars ($171,000.00). The note provided that interest would be computed in the following manner: "Prime

rate of interest established by the First National Bank of Boston plus One and Three-Fourths Per Cent (1 3/4%). Such rate to be adjusted quarterly as of the last day of each calendar quarter. The initial rate of interest payable hereunder shall be Eight and One-Fourth Per Cent (8 1/4%)." The note also provided that appellee, James Kramer, as guarantor, would repay the note with interest at the highest rate permitted by law until fully paid.

Under the terms of the note, Two Thousand Eight Hundred Fifty and no/100 Dollars ($2,850.00) principal together with accrued interest was to be paid on the 1st day of May, 1973, and Two Thousand Eight Hundred Fifty and no/100 Dolars ($2,850.00) together with accrued interest was to be paid on the 1st day of each succeeding month until the entire amount of principal and interest were paid.

Appellee paid to appellant two separate installments in the sum of Eighty-five Thousand and no/100 Dollars ($85,000.00) and, consequently, left a remaining unpaid balance on the note in the sum of Eighty-six Thousand and no/100 Dollars ($86,000.00), plus interest. On October 19, 1976, appellant instituted its action against appellee[1] in the Circuit Court of Independence County after appellee had ignored and refused the demands for payment made by appellant. Pursuant to appellee's motion for summary judgment, upon its affirmative defense of usury, a judgment was entered by the trial court cancelling the indebtedness.

## HOLDING OF THE TRIAL COURT

The trial court held that there was no material issue of fact involved and that a summary judgment should be granted in favor of appellee inasmuch as the note was usurious and void.

## APPELLANT'S CONTENTION FOR REVERSAL

The lower court committed error in granting summary judgment in that genuine fact issues existed.

---

[1]J. B. Kramer Grocery Company, Inc. was not made a party to the action.

## THE DECISION

Ark. Stat. Ann. § 29-211 (Repl. 1962 and Supp. 1977) relating to summary judgment proceedings in the circuit, chancery and probate courts, in relevant part, is as follows:

". . . The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. . . . "

The primary purpose of summary judgment procedure is to determine whether there are any triable issues of fact requiring a formal trial on the merits. The procedure provides a speedy method of determining whether there are any disputed and material issues of fact. The remedy of summary judgment is essentially one in the interest of justice and its object is to obtain judgment immediately and avoid delays which may result in injustice. If the trial court concludes, after reviewing the record, that there are no questions of fact, the court applies the law in accordance with admitted facts as disclosed by the affidavits, if any, and other submitted pleadings and grants the summary judgment if the party is otherwise entitled thereto as a matter of law. *Universal Life Ins. Co.* v. *Howlett,* 240 Ark. 458, 400 S.W. 2d 294; *Jones* v. *Comer,* 237 Ark. 500, 374 S.W. 2d 465. In reviewing the record, the trial court must view it in the light most favorable to the party resisting the motion with all doubts and inferences being resolved against the moving party.

In considering the entire record submitted in this cause, we cannot conclude or hold that the trial court committed reversible error. We are satisfied and persuaded that the trial court was correct in holding that appellee was entitled to a judgment as a matter of law.

In reviewing the installment note in question which provides, in material part, that the "Prime rate of interest established by the First National Bank of Boston plus One and Three-Fourths Per Cent (1 3/4%)" along with the admissions

made by appellant in response to request for admissions submitted by appellee, there is not a material fact in dispute.

Appellant admitted in its response to defendant's request for admissions that the following schedule represented the prime rate of interest established by First National Bank of Boston for the designated periods:

| PERIOD | | INTEREST | TOTAL INTEREST |
| From | To | RATE | CHARGED |
| --- | --- | --- | --- |
| 8/13/73 | 8/21/73 | 9.25 plus 1 3/4 | 11.00 |
| 8/21/73 | 8/28/73 | 9.50 plus 1 3/4 | 11.25 |
| 8/28/73 | 9/14/73 | 9.75 plus 1 3/4 | 11.50 |
| 9/14/73 | 10/23/73 | 10.00 plus 1 3/4 | 11.75 |
| 10/23/73 | 12/10/73 | 9.75 plus 1 3/4 | 11.50 |
| 12/10/73 | 12/31/73 | 10.00 plus 1 3/4 | 11.75 |
| 12/31/73 | 2/1/74 | 9.75 plus 1 3/4 | 11.50 |
| 2/1/74 | 2/11/74 | 9.50 plus 1 3/4 | 11.25 |
| 2/11/74 | 2/20/74 | 9.25 plus 1 3/4 | 11.00 |
| 2/20/74 | 2/26/74 | 9.00 plus 1 3/4 | 10.75 |
| 2/26/74 | 3/22/74 | 8.75 plus 1 3/4 | 10.50 |
| 3/22/74 | 3/28/74 | 9.00 plus 1 3/4 | 10.75 |
| 3/28/74 | 4/3/74 | 9.25 plus 1 3/4 | 11.00 |
| 4/3/74 | 4/8/74 | 9.50 plus 1 3/4 | 11.25 |
| 4/8/74 | 4/11/74 | 9.75 plus 1 3/4 | 11.50 |
| 4/11/74 | 4/19/74 | 10.00 plus 1 3/4 | 11.75 |
| 4/19/74 | 4/24/74 | 10.25 plus 1 3/4 | 12.00 |
| 4/24/74 | 5/1/74 | 10.50 plus 1 3/4 | 12.25 |
| 5/1/74 | 5/6/74 | 10.75 plus 1 3/4 | 12.50 |
| 5/6/74 | 5/10/74 | 11.00 plus 1 3/4 | 12.75 |
| 5/10/74 | 5/17/74 | 11.25 plus 1 3/4 | 13.00 |
| 5/17/74 | 6/26/74 | 11.50 plus 1 3/4 | 13.25 |
| 6/26/74 | 7/5/74 | 11.75 plus 1 3/4 | 13.50 |
| 6/5/74 | 9/30/74 | 12.00 plus 1 3/4 | 13.75 |
| 9/30/74 | 10/21/74 | 11.75 plus 1 3.4 | 13.50 |
| 10/21/74 | 10/29/74 | 11.50 plus 1 3/4 | 13.25 |
| 10/29/74 | 11/18/74 | 11.00 plus 1 3/4 | 12.75 |
| 11/18/74 | 1/13/75 | 10.50 plus 1 3/4 | 12.25 |
| 1/13/75 | 1/20/75 | 10.25 plus 1 3/4 | 12.00 |
| 1/20/74 | 1/27/75 | 10.00 plus 1 3/4 | 11.75 |
| 1/27/75 | 2/4/75 | 9.50 plus 1 3/4 | 11.25 |
| 2/5/75 | 2/10/75 | 9.25 plus 1 3/4 | 11.00 |

According to the agreement of the parties, one and three-fourths percent (1 3/4%) was to be added to the aforementioned prime rate of interest.

It is readily apparent that between the date of the execution of the installment note and the trial of this cause, the interest rate far exceeded the 10% per annum permissible under the Arkansas Constitution, Article 19, Section 13, which provides, in material part, as follows:

> "All contracts for a greater rate of interest than ten percent per annum shall be void, as to principal and interest, . . . "

Indeed, the installment note involved in this action calls for a variable rate of interest to be determined by a future contingency in which appellee had no control. *See: Foster* v. *Universal C.I.T. Corp.,* 231 Ark. 230, 330 S.W. 2d 288 (1959); *Sosebee* v. *Boswell,* 242 Ark. 396, 414 S.W. 2d 380 (1967).

In *Sosebee* v. *Boswell,* supra, we said, *inter alia:*

> ". . . When the lender stipulates for the absolute repayment of principal and interest at the highest legal rate, and for a further profit payable upon a contingency not under the control of the borrower, the contract is usurious. Furthermore, even the chance . . . of the lender's receiving excessive profit under the transaction or arrangement is more than the lender is legally entitled to require. *** A *fortiori* is the contract usurious when the contingency under which the excessive interest is payable is under the control of the lender."

Appellant argues that it is a question of fact as to whether it intended to profit beyond an amount equal to ten percent (10%) of the principal shown on the note. Moreover, appellant insists that provisions of the note which state that appellee guarantees payment of the note with "interest at the highest rate permitted by law" supports its position and also establishes an ambiguity on the face of the note, thus raising a material issue of fact concerning the intent on the part of

appellant to impose an illegal rate of interest.[2]

Appellant's argument is not persuasive. It is readily apparent on the face of the note that there is nothing which limits the interest payable to the maximum allowable under Arkansas law. Moreover, during a substantial part of the life of the indebtedness, the prime rate of interest of the First National Bank of Boston plus one and three-fourths percent (1 3/4%) has exceeded the maximum allowable interest under Arkansas law.

In *Wilson* v. *Whitworth,* 197 Ark. 675, 125 S.W. 2d 112, we said:

"It is not necessary for both parties to intend that an unlawful rate of interest be charged, but *if the lender alone charges or receives more than is lawful, the contract is void.*" (Emphasis added)

*See also: Cagle* v. *Boyle Mtg. Co.,* 261 Ark. 437.

It is obvious that appellant made a mistake of the law, that of thinking that its method of charging interest, and the consequences that flowed therefrom was lawful under Arkansas law. If the Arkansas Constitution means what it says that all contracts for a greater rate of interest than ten percent (10%) are void, and this Court is to carry out this mandate, as every judge of this Court has a sworn duty to do, every lender who misjudges the law and collects excessive interest charges cannot purge his conduct by alleging in court that the debtor must prove that the lender intended to profit in excess of ten percent (10%), when, as here, it is clear from the face of the documents involved that the lender has charged more than the lawful interest rate.

Finally, the remaining question to be dealt with is whether the finding that the installment note sued upon is void for usury inures to the benefit of appellee who signed in

---

[2]The installment note executed by appellee was prepared by appellant. *See: Foster* v. *Universal C.I.T. Corp.,* supra, where we said the contract must be strictly construed against the party preparing it.

his individual capacity as a guarantor.[3] We are persuaded that a guarantor may take advantage of usury in the obligation guaranteed. In other words, if the debt which the guarantor has guaranteed is declared void and a nullity, the guarantee is also void, especially when, as here, the principal obligation and the guaranty thereof are parts of one entire transaction so that there is a matter of fact only one contract. *Roe* v. *Kiser*, 62 Ark. 92.

Nor are we persuaded or convinced that appellee is precluded from asserting usury on the theory that there exists a disclaimer in that the guarantee stated that appellee guarantees payment of the note with "interest at the highest. rate permitted by law." It must be remembered that the quoted provision appears only in connection with the guaranty agreement and does not appear in the principal obligation between the maker and appellant. As asserted by the appellee, the principal obligation having been rendered illegal and void, there is nothing for the appellee to guarantee.

Affirmed.

HARRIS, C.J., and HOLT and HICKMAN, JJ., concur in results.

GEORGE ROSE SMITH, J., concurs with written opinion.

FOGLEMAN, J., dissents.

GEORGE ROSE SMITH, Justice, concurring. The majority opinion holds the contract to have been usurious because the interest rate, calculated in accordance with the unambiguous language of the note, was more than 10% per annum for 18 successive months (October 1, 1973, through March 1, 1975). I would affirm the decree not on that broad ground but on the narrower ground that, as of the filing of the complaint on October 19, 1976, the contract as written had already provided for interest that exceeded the legal 10% maximum by $2,-

[3]Ura Faye Kramer also executed the note in her individual capacity as guarantor, but was not made a party defendant to this action having been released from her individual guarantee in July, 1973. Whether the release of Ura Faye Kramer affected appellee's standing as a guarantor is not an issue in this case.

553.24. A plaintiff's cause of action is to be determined as of the date the complaint is filed, regardless of any later change in the facts. *Massey* v. *Tyra,* 217 Ark. 970, 234 S.W. 2d 759 (1950); *Pearce* v. *Hollis Construction Co.,* 212 Ark. 434, 206 S.W. 2d 15 (1947); *Vandergriff* v. *Vandergriff,* 211 Ark. 848, 202 S.W. 2d 967 (1947).

Contrary to the opening sentence in the dissenting opinion, I think this case is tailor-made for a summary judgment. The *controlling* facts are absolutely without dispute. There is nothing for the court to do except to apply simple mathematics and unquestioned rules of law to the uncontradicted facts. When that is done, the contract is undeniably usurious.

The debtor, J. B. Kramer Grocery Company, agreed to pay $171,000 in 60 equal monthly installments of $2,850, with interest at the specified Boston prime rate plus 1 3/4%, the rate to be adjusted as of the last day of each calendar quarter. As an appendix to this concurring opinion I am attaching a calculation of the interest that would have accrued from the date of the note down to and including the date of the last installment that was payable before suit was filed. It will be seen that the interest, according to the terms of the note, would have been more than $2,500 in excess of the maximum permissible total.

No matter how "capital-hungry" the State of Arkansas may be — a matter about which I know next to nothing — the law is perfectly clear. Contracts calling for more than 10% interest per annum are void as to principal and interest. Ark. Const., Art. 19, § 13 (1874). Contingent contracts are to be enforced according to their terms, when the contingency is not within the control of the borrower. *Sosebee* v. *Boswell,* 242 Ark. 396, 414 S.W. 2d 380 (1967), cert. den. 389 U.S. 953 (1967). (There the majority rejected a dissenting opinion making the same arguments that are now repeated in dissent.)

It seems to me to be utterly futile to attempt to raise the specter of a question of fact about the parties' intent. The language of the contract, by incorporation by reference, adopted the Boston rate plus 1 3/4% as positively and as un-

mistakably as if the figures set out in the appendix to this opinion had been written into the contract. Neither party had the power to change the terms that had been agreed upon. It makes no difference that the appellant might have offered to parade into court a hundred expert witnesses ready to testify that the increase in the Boston rate was unexpected and unprecedented. Such evidence would directly contradict the language of the agreement and would therefore be inadmissible under the parol evidence rule — a rule of substantive law. *Hoffman* v. *Late,* 222 Ark. 395, 260 S.W. 2d 446 (1953). Thus the trial judge was demonstrably and unquestionably correct in granting the appellee's motion for summary judgment.

## APPENDIX

| Due Date of Each Payment | Principal Balance | Int. Rate to be charged | Interest to be charged | Interest at 10% |
|---|---|---|---|---|
| 1973 | | | | |
| May 1 | 171,000 | 8.25 | $ 695.70 | $ 843.30 |
| June | 168,150 | 8.25 | 1,156.03 | 1,401.25 |
| July | 165,300 | 9.50 | 1,308.62 | 1,377.50 |
| Aug. | 162,450 | 9.50 | 1,286.06 | 1,353.75 |
| Sept. | 159,600 | 9.50 | 1,263.50 | 1,330.00 |
| Oct. | 156,750 | 11.75 | 1,534.84 | 1,306.25 |
| Nov. | 153,900 | 11.75 | 1,506.93 | 1,282.50 |
| Dec. | 151,050 | 11.75 | 1,479.03 | 1,258.75 |
| 1974 | | | | |
| Jan. | 148,200 | 11.50 | 1,420.25 | 1,235.00 |
| Feb. | 145,350 | 11.50 | 1,392.93 | 1,211.25 |
| March | 142,500 | 11.50 | 1,365.62 | 1,187.50 |
| April | 139,650 | 11.00 | 1,280.12 | 1,163.75 |
| May | 136,800 | 11.00 | 1,254.00 | 1,140.00 |
| June | 133,950 | 11.00 | 1,227.87 | 1,116.25 |
| July | 131,100 | 13.50 | 1,474.87 | 1,092.50 |
| Aug. | 128,250 | 13.50 | 1,442.81 | 1,068.75 |
| Sept. | 125,400 | 13.50 | 1,410.75 | 1,045.00 |
| Oct. | 122,550 | 13.50 | 1,378.68 | 1,021.25 |
| Nov. | 119,700 | 13.50 | 1,346.62 | 997.50 |
| Dec. | 116,850 | 13.50 | 1,314.56 | 973.75 |

| Due Date of Each Payment | Principal Balance | Int. Rate to be charged | Interest to be charged | Interest at 10% |
|---|---|---|---|---|
| 1975 | | | | |
| Jan. | 114,000 | 12.25 | 1,163.75 | 950.00 |
| Feb. | 111,150 | 12.25 | 1,134.65 | 926.25 |
| March | 108,300 | 12.25 | 1,105.56 | 902.50 |
| April | 105,450 | 9.25 | 812.84 | 878.75 |
| May | 102,600 | 9.25 | 790.87 | 855.00 |
| June | 99,750 | 9.25 | 768.90 | 831.25 |
| July | 96,900 | 8.75 | 706.56 | 807.50 |
| Aug. | 94,050 | 8.75 | 685.78 | 783.75 |
| Sept. | 91,200 | 8.75 | 665.00 | 760.00 |
| Oct. | 88.350 | 9.75 | 717.84 | 736.25 |
| Nov. | 85,500 | 9.75 | 694.68 | 712.50 |
| Dec. | 82,650 | 9.75 | 671.53 | 688.75 |
| 1976 | | | | |
| Jan. | 79,800 | 9.00 | 598.50 | 665.00 |
| Feb. | 76,950 | 9.00 | 577.12 | 641.25 |
| March | 74,100 | 9.00 | 555.75 | 617.50 |
| April | 71,250 | 8.50 | 504.68 | 593.75 |
| May | 68,400 | 8.50 | 484.50 | 570.00 |
| June | 65,550 | 8.50 | 464.31 | 546.25 |
| July | 62,700 | 9.00 | 470.25 | 522.50 |
| Aug. | 59,850 | 9.00 | 448.87 | 498.75 |
| Sept. | 57,000 | 9.00 | 427.50 | 475.00 |
| Oct. | 54,150 | 8.50 | 383.56 | 451.25 |
| | | $ | 41,372.79 | 38,819.55 |

JOHN A. FOGLEMAN, Justice, dissenting. This is not a case for summary judgment. By disposing of this case by summary judgment, the majority, by disregarding cardinal principles governing the treatment of usury questions, has virtually outlawed a modern business method of obtaining capital in a capital-hungry state. This is because in every variable interest note tied to the prime interest rate, fluctuations in that rate may, without warning, or control by either party, make the effective interest rate above 10% per annum. Hereafter, any such contract, made in good faith, will have to be made, if made at all, in dealings that cannot in any way relate to the

State of Arkansas. See *Cooper* v. *Cherokee Village,* 236 Ark. 37, 364 S.W. 2d 158.

There. is not the slightest suggestion in the record on which the summary judgment was rendered that the note was drawn and the scheme devised as a cloak for usury. So far as this record discloses, it was a perfectly legitimate business transaction entered into when the prime interest rate was 6.5%. There is no suggestion that either party, in his wildest imagination, could have, or should have, anticipated the explosive and perhaps unprecedented, rise of the prime interest rate at a time when the major portion of the principal would still be outstanding. In five months the rate rose to 10%. If the prime interest rate had not reached 10% as quickly as it did, the effective interest rate would not have exceeded 10% per annum over the life of the loan. It remained at 10% or over during a period that, insofar as the note was concerned, applied to monthly payments due November 1 and December 1, 1973, January 1, February 1, March 1, July 1, August 1, September 1, October 1, November 1, and December 1, 1974 and January 1, 1975. At the time these payments were due the rates were applicable to principal balances, if the note had been paid according to its terms, ranging from $153,900 to $105,450. If these rates had applied when these balances ranged downward from $50,000, for example, we would have quite a different picture.

In order to put the matter in proper perspective, I think it appropriate to quote the clause incorporated in the note by which the Kramers became guarantors. It read:

> The undersigned James B. Kramer and Ura Faye Kramer, individually, hereby guarantee *the payment of the within note at maturity, or at any time thereafter, with interest at the highest rate permitted by law* until fully paid, hereby waiving presentment, demand for payment, protest for non-payment, notice of dishonor, and all extensions of time for payment. [Emphasis added.]

I emphasize that this clause is not separate from the note. It is a part of the note itself. I think it appropriate to point out that this clause is not the typical disavowal of an intent to charge usurious interest we have so often, and properly, disregarded.

In my opinion, it is a limitation on the interest to be paid, by its very language.[1] Appellant has not sought to recover any more, as was the case in *Daniels* v. *Johnson*, 234 Ark. 315, 351 S.W. 2d 853. The guarantor does not say that *he* will pay the principal with the interest at the highest legal rate, in case of default by the maker. He guarantees *the payment of the note* at maturity, or thereafter, with interest at the highest legal rate.

The majority opinion is based upon a totally erroneous premise. The admission covers interest rates both before and after the list reproduced in the majority opinion. It is sufficient, at this point, to say that they were lower both before and after the periods listed.[2] By simple calculation, the principal of $171,000, if paid according to the contract, would have been repaid by 60 payments of $2,850. Thus the term of the loan was five years and eighteen days. There is absolutely no prohibition against an interest rate in excess of 10% per annum over a portion of the term of the loan, and there never has been, so long as the interest taken or reserved does not exceed 10% per annum over the full term of the loan. A contract is usurious only if the amount the borrower is required, according to the terms of the agreement, to repay, over the whole term of the loan, more than he could have been required to pay if the interest rate had been the maximum of 10% per annum, i.e., the principal, plus 10% per annum from the date of the receipt. *Davidson* v. *Commercial Credit Equipment Corp.*, 255 Ark. 127, 499 S.W. 2d 68; *McDougall* v. *Hachmeister*, 184 Ark. 28, 41 S.W. 2d 1088; 76 ALR 1463; *Lyttle* v. *Mathews Inv. Co.*, 193 Ark. 849, 103 S.W. 2d 47. In making the test the principles of application of partial payments under the statute [Ark. Stat. Ann. § 68-606 (Repl. 1957)] are utilized. *Lyttle* v. *Mathews Inv. Co.*, supra. When the proper test is applied to this contract, it becomes apparent that the amount the borrower would have been required to repay would never have exceeded 10% if the prime rate (not the rate prescribed by the note) had remained below 10%. Any interest in excess

---

[1] If it is not clearly a limitation, and I do not concede that it is not, it at least is an ambiguity which should be construed most favorably to the legality of the contract; or, if not, parol evidence would be admissible to explain the terms of the contract.

[2] It should be noted that the prime rate in the tabulation shown in the majority opinion is the first figure in the column headed "Interest Rate."

of 10% per annum over the full term of the loan is attributable to fortuitous circumstance. In order to say that the lender had the intention to charge usury, we would have to attribute to it a clairvoyance possessed by few, if any. Who could have contemplated on April 13, 1973, when the loan was made, that the prime interest rate would jump from 6½% to 10% in five months and rocket to 12% in just a little more than a year? Not only would the contract not have required any payment in excess of interest at the rate of 10% per annum if the *prime rate* had remained below 10% during the 18-month period when the rates soared above that level, it would not have if the high rates prevailing between August 13, 1973 and February 10, 1975 had occurred say two years later when more of the principal should have been retired according to the schedule of payments at a lower interest rate. For a better understanding, it is appropriate that some of the admitted rates for the period not shown in the majority opinion be set out. It is not necessary that all be reproduced, because the interest rates on the last days of the calendar quarters, i.e., March 31, June 30, September 30 and December 31, of each year are the only ones that affect interest rates.

| PERIOD | | PRIME INTEREST RATE |
|---|---|---|
| From | To | |
| 3/26/73 | 4/18/73 | 6.50 |
| 6/22/73 | 7/2/73 | 7.75 |
| 3/26/75 | 5/21/75 | 7.50 |
| 6/10/75 | 7/18/75 | 7.00 |
| 9/12/75 | 10/28/75 | 8.00 |
| 12/1/75 | 1/12/76 | 7.25 |
| 1/22/76 | 5/28/76 | 6.75 |
| 6/7/76 | 8/2/76 | 7.25 |
| 9/27/76 | 11/1/76 | 6.75 |
| 12/13/76 | | 6.25 |

It is the agreement, not the performance of it, that renders it usurious. *Hayes* v. *First National Bank of Memphis,* 256 Ark. 328, 507 S.W. 2d 701; *Foster* v. *Universal C.I.T. Corp.,* 231 Ark. 230, 330 S.W. 2d 288. It must be assumed that the

contract will be performed according to its terms. *Eldred v. Hart*, 87 Ark. 534, 113 S.W. 213; *Sager v. American Investment Co.*, 170 Ark. 568, 280 S.W. 654; *Hayes v. First National Bank of Memphis*, supra. The test is whether the contract, if performed according to its terms, will result in producing to the lender a greater rate of interest than the law allows and whether such a result was intended. *Hayes v. First National Bank of Memphis*, supra; *McDougall v. Hachmeister*, supra; *Lyttle v. Mathews Investment Co.*, supra. In examining the transaction, the court must look to the whole transaction and all the circumstances. *Textron, Inc. v. Whitener*, 249 Ark. 57, 458 S.W. 2d 367; *Ragge v. Bryan*, 249 Ark. 164, 458 S.W. 2d 403. The intent of the lender to exact more than the legal rate of interest must exist at the time the alleged usurious instrument was made. In *Sloan v. Sears, Roebuck & Co.*, 228 Ark. 464, 308 S.W. 2d 802, this court said:

> The facts and circumstances existing at the instant the contract is consummated determine whether it is usurious. **\*\*\***

> *General Contract Corp. v. Duke*, 223 Ark. 938, 270 S.W. 2d 918, 919, involved the sale of an automobile, and there we said:

> > Our cases hold that the transaction is to be judged at the time the contract is entered into, and not thereafter. **\*\*\***

Thus, it is clear that usury is to be determined from the facts and circumstances existing at the time of the transaction and not by subsequent events. *General Contract Corp. v. Duke*, 223 Ark. 938, 270 S.W. 2d 918.

Certainly, it is not apparent from the face of the note that the interest rate would be usurious, or for that matter that it would ever exceed 10% per annum. When the usurious nature of the transaction is not apparent from the face of the instrument, the question of usurious intent (i.e., the intent to exact interest at more than the legal rate, not the intent to violate the usury laws) is for the factfinder and the burden of proving usury by clear, satisfactory and convincing evidence is on the party who asserts it. *Brown v. Central Arkansas Production Credit Ass'n.*, 256 Ark. 804, 510 S.W. 2d 571; *Hayes v. First National Bank of Memphis*, supra; *Peoples Loan & Investment Co. v. Booth*, 245 Ark. 146, 431 S.W. 2d 472; *Arkansas Real Estate*

*Co.* v. *Buhler,* 247 Ark. 582, 447 S.W. 2d 126; *Haley* v. *Greenhaw,* 235 Ark. 481, 360 S.W. 2d 753; *Commercial Credit Plan, Inc.* v. *Chandler,* 218 Ark. 966, 239 S.W. 2d 1009; *Baxter* v. *Jackson,* 193 Ark. 996, 104 S.W. 2d 202; *Citizens' Bank* v. *Murphy,* 83 Ark. 31, 102 S.W. 697. The issue must be determined as of the date of the contract and not by subsequent events. *Brown* v. *Central Arkansas Production Credit Ass'n.,* supra; *United-Bilt Homes, Inc.* v. *Teague,* 245 Ark. 132, 432 S.W. 2d 1. It must be shown that there was an intention on the part of the lender to take or receive more than the maximum legal rate of interest. *Ragge* v. *Bryan,* supra; *Peoples Loan & Investment Co.* v. *Booth,* supra. The intention to charge a usurious rate of interest will never be presumed, imputed or inferred where an opposite result can be reached. *Brown* v. *Central Arkansas Production Credit Ass'n.,* supra; *Hayes* v. *First National Bank of Memphis,* supra; *Davidson* v. *Commercial Credit Equip. Corp.,* supra; *Key* v. *Worthen Bank & Trust Co.,* 260 Ark. 725, 543 S.W. 2d 496. It must be shown by clear and satisfactory evidence that there was an intent knowingly to take excessive interest. *American Farm Mortgage Co.* v. *Ingraham,* 174 Ark. 578, 297 S.W. 1039. It must be shown by clear and convincing evidence that appellant knowingly entered into a usurious contract, intending to profit by the methods employed. *Commercial Credit Plan* v. *Chandler,* supra. The lender must have knowingly and intentionally reserved, taken or secured interest at a higher rate than allowed by law before the note was usurious. *Singley* v. *Norman,* 202 Ark. 532, 150 S.W. 2d 947; *Briggs* v. *Steele,* 91 Ark. 458, 121 S.W. 754.

To constitute usury, where there is no agreement by which the borrower promised to pay, and the lender knowingly receives a higher interest than the statute allows, the greater rate of interest must be knowingly and intentionally reserved, taken or secured. It is essential that there be an intent or agreement to take unlawful interest and such unlawful interest must be *actually* taken, received or reserved. *Armstrong* v. *McCluskey,* 188 Ark. 406, 65 S.W. 2d 558; *Briant* v. *Carl-Lee Bros.,* 158 Ark. 62, 249 S.W. 577. This rule was first stated in *Briggs* v. *Steele,* 91 Ark. 458, 121 S.W. 754, thus:

To constitute usury there must either be an agreement between the parties by which the borrower promises to pay, and the lender knowingly receives, a

higher rate of interest than the statute allows for the loan or forbearance of money, or such greater rate of interest must be knowingly and intentionally "reserved, taken, or secured" for such loan of forbearance. It is essential, in order to establish the plea of usury, that there was a loan or forbearance of money and that for such forbearance there was an intent or agreement to take unlawful interest, and that such unlawful interest was actually taken or reserved.

The quotation has been repeated many times. See e.g., *Brittian* v. *McKim,* 204 Ark. 647, 164 S.W. 2d 435; *Universal CIT Credit Corp.* v. *Lackey,* 228 Ark. 101, 305 S.W. 2d 858.

The rule is incorporated into the statute governing such contracts. It reads:

All bonds, bills, notes, assurances, conveyances, and all other contracts or securities whatever, whereupon or whereby there shall be reserved, taken or secured, or agreed to be taken or reserved, any greater sum, or greater value for the loan or forbearance of any money, goods, things in action, or any other valuable thing than is prescribed in this act [§§ 68-602 — 68-604, 68-608], shall be void.

The language of the statute and our decisions have been so applied that where there is no agreement to pay interest at an excessive rate, or the excessive charge is not incorporated into the contract, the lender must knowingly receive some part of the excessive interest. See *Garvin* v. *Linton,* 62 Ark. 370, 35 S.W. 430, 37 S.W. 569; *Jones* v. *Phillippe,* 135 Ark. 578, 206 S.W. 40.

I had thought that on motion for summary judgment, a very extreme remedy, that all reasonable inferences were to be drawn in favor of the party against whom the judgment would be entered and all reasonable doubts resolved in his favor. *Harvey* v. *Shaver,* 247 Ark. 92, 444 S.W. 2d 256; *Deltic Farm & Timber Co.* v. *Manning,* 239 Ark. 264, 389 S.W. 2d 435; *Russell* v. *City of Rogers,* 236 Ark. 713, 368 S.W. 2d 89; *Mason* v. *Funderburk,* 247 Ark. 521, 446 S.W. 2d 543. Just the opposite has been done here. Not only that, the intention to charge a usurious rate has been presumed, imputed or inferred.

Summary judgment is too drastic a remedy to be so applied. To say that only a mathematical calculation[3] is involved, much of what we have said on the subject of intent must be totally disregarded. It requires an ex post facto view of the matter, contrary to our decisions. It must be remembered that the lender has not received any payment of interest and it is obvious from the complaint that no payment has been applied to interest. The mechanistic mathematical computation approach taken in the concurring opinion also totally ignores the fact that the guarantors guaranteed "payment of the note at maturity, or at any time thereafter, with interest at the highest rate permitted by law until fully paid." Even if this is not an integral part of the contract and a limitation on the interest rate, it is certainly a very important circumstance constituting a part of the transaction and having a bearing upon the question of intent, upon which the determination of usury turns.

I disagree with the application of the parol evidence rule suggested in the concurring opinion. The authority cited merely states that the parol evidence rule is substantive law. It has little place in usury cases. Every time a borrower seeks to show the intention of the lender by contradicting the language stated in the face of the agreement, he is permitted

---

[3]I do not agree with the mathematical computation attached to the concurring opinion. In the first place, it is based upon an application of rate changes which are not in accord with the terms of the note. For example, the rate of 11.75% is used to establish the payment due on October 1, 1973. This is based upon the fact that the prime rate was 10% on September 30, 1973. Under the terms of the note that rate did not apply to the October 1 payment. The payment on October 1 was to include *accrued* interest, i.e., interest that accrued between September 1, 1973 and October 1, 1973. Interest would only *accrue* on a rate that had already been established, that is, the rate that applied under the terms of the note while it was accruing. This same "advancement" of rates in calculating accrued interest is followed throughout the calculation and may account, in substantial part, for the difference in my calculations and those of the author of that opinion. I do not set out my calculations, however, because I agree with the author of that opinion that, if the note had been paid at the rates arrived at by adding to the prime rate, and ignoring the limitation on interest in the note, the amount of interest would have, on both October 1, 1976 and October 19, 1976, exceeded 10% per annum on what would have been the outstanding balance from time to time, on the installment basis, if the note had been paid according to its terms. I repeat — appellant did not seek to recover this amount.

to do so by parol evidence. See *American Physicians Insurance Co. v. Hruska,* 244 Ark. 1176, 428 S.W. 2d 622. But we have rejected the idea expressed in the concurring opinion that parol evidence on the question of intent of the lender is not admissible when offered by the lender in explanation of the transaction. *Peoples Loan & Investment Co. v. Booth,* 245 Ark. 146, 431 S.W. 2d 472; *Nineteen Corporation v. Guaranty Financial Corp.,* 246 Ark. 400, 438 S.W. 2d 685.

I do not understand the application here of the rule that a defendant cannot do anything to change the cause of action of a plaintiff at the time suit is filed, as we held in *Massey v. Tyra,* 217 Ark. 970, 234 S.W. 2d 759. Neither can I appreciate the applicability of *Pearce v. Hollis Construction Co.,* 212 Ark. 434, 206 S.W. 2d 15, or *Vandergriff v. Vandergriff,* 211 Ark. 848, 202 S.W. 2d 967, where we held that a suit was premature where plaintiff's cause of action had not accrued when his suit was filed. None of these cases have any bearing upon the amount of a plaintiff's recovery when he has a cause of action.

Nor do I agree that *Sosebee v. Boswell,* 242 Ark. 396, 414 S.W. 2d 380, cert. den. 389 U.S. 953, 88 S. Ct. 337, 19 L. Ed. 2d 363, is controlling here. In *Sosebee,* the contingency was based on a collateral contract, which required the borrower to put in escrow $150 at the time the borrower sought release from the mortgage securing the debt of any of the lots in a residential subdivision. The parties expected that all lots would be sold by the borrower during the three-year term of the loan. The $150 deposit was also to be made for each lot not released from the mortgage if the borrower prepaid the loan. This $150 was to be forfeited if the lot purchasers did not obtain FHA or VA financing through the lender. Although I have difficulty in accepting the result in *Sosebee,* that was quite a different situation. Furthermore, the device in *Sosebee* was treated as a cloak for usury. There's no suggestion of a cloak here. That was the basis for the rejection in *Sosebee* of *Dunbar v. State Building & Loan Ass'n.,* 171 Ark. 232, 284 S.W. 2, which was also distinguished on the basis that *Dunbar* involved a loan by a *bona fide* building and loan association. There is no indication that appellant conducts a less legitimate operation. At any rate, we said in *Dunbar* that if there was an element of uncertainty or hazard in the contract relative to the amount of interest to be paid, the con-

tingency excludes the idea of usury in the agreement. Why should that rule of law apply only to a building and loan association?

It seems to me that in considering this contract and in view of the severity of the penalty we should follow the principles set out in Usury, § 11a, 91 CJS 579, viz:

> If an agreement can reasonably be construed as nonusurious, it should be so construed. The question of usury in loan transactions must be determined by construing all the papers executed in connection therewith, and not from isolated clauses and provisions therein. The courts, therefore, will not hold a contract to be in violation of the usury laws unless on a fair and reasonable construction of all of its terms, in view of the dealings of the parties, it is manifest that the intent of the parties was to engage in such a transaction as is forbidden by those laws. They have no right, however, to depart from the terms in which the contract is expressed to make legal what the parties have made unlawful. In determining whether a loan transaction is usurious, the courts will give effect to the intention of the parties, as reflected in the contract, but an unlawful intent will not be imputed as long as the acts of the parties admit of a construction which will render them lawful. If two reasonable constructions are possible, by one of which the contract will be legal and valid, while by the other it will be usurious and unlawful, the court will always adopt the former. In short, the general rule of interpretation and construction of such contracts may be said to be that the contract is not usurious when it may be explained on any other hypothesis.

These principles are in harmony with our case law and consistent with the requirement that a contract be construed to be a legal and valid one if it is reasonably possible to do so.

Of course, it is the duty of this court to uphold the Constitution of Arkansas, and I take it that none of the members of this court need to be reminded of that fact. But it is not the duty of this court, by an overzealous attention to one constitutional provision, to act for the sovereign people in

amending that constitution by extending it beyond its own limits or to usurp the functions of the legislative branch of the government by implementing it. I humbly submit that this is just what the majority has done. The lender, upon whom the severest of penalties in the civil law may be invoked, has rights too, even under the usury clause in our constitution. These rights should be respected and regarded as highly as those of the borrower.